829 F.2d 957
 44 Fair Empl.Prac.Cas. 1419,
44 Empl. Prac. Dec. P 37,406
Albert P. BRUNO, Plaintiff-Appellee/Cross-Appellant,
v.
WESTERN ELECTRIC COMPANY, Defendant-Appellant/Cross-Appellee.
 Nos. 84-1488, 84-1572 and 84-1911.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 18, 1987.
 
 Alexander Halpern (Joseph J. Barnosky with him on briefs), of Caplan and Earnest, Boulder, Colo., for plaintiff-appellee.
 Christine H. Perdue of Hunton & Williams, Richmond, Va. (Paul M. Thompson and Paul E. Mirengoff of Hunton & Williams, Lee Dale of Sherman & Howard, Denver, Colo., and Lawrence M. Joseph of AT & T Technologies, Inc., Berkley Heights, N.J., with her on briefs), for defendant-appellant.
 Before McKAY, MOORE and BALDOCK, Circuit Judges.
 McKAY, Circuit Judge.
 
 
 1
 Plaintiff, Albert P. Bruno, filed an action under the Age Discrimination in Employment Act, 29 U.S.C. Secs. 621-634 (1982 & Supp. III 1985) (ADEA), against his employer, Western Electric Company. In a bifurcated trial, the issue of liability was tried by a jury and submitted on special interrogatories. The jury returned a verdict for plaintiff, and the district court denied defendant's motion for a judgment notwithstanding the verdict. The court then tried the damages issue and entered judgment for plaintiff, granting monetary damages for back pay, unpaid overtime, lost benefits and liquidated damages. Defendant and plaintiff appeal, raising issues in three different areas: (1) timeliness of plaintiff's Equal Employment Opportunity Commission (EEOC) filing, (2) validity of jury verdict on liability, and (3) correctness of the trial court's damages judgment.
 
 I. Timeliness of EEOC Filing
 
 2
 Defendant claims that plaintiff failed to satisfy the filing requirements found in 29 U.S.C. Sec. 626(d) (1982). Section 626(d)(1), which both parties agree applies to this case, provides that plaintiff can maintain a civil action for an ADEA violation only if he files a discrimination charge with the EEOC "within 180 days after the alleged unlawful practice occurred." Plaintiff filed his charge with the EEOC on September 4, 1981; consequently, defendant argues that any claim concerning an act occurring before March 8, 1981 is barred. Plaintiff claims that he has satisfied the requirements of section 626(d)(1) because he has shown a continuing violation that extended into the statutory filing period.
 
 
 3
 Defendant first raised the timeliness issue at the summary judgment stage. The district court rejected defendant's motion for partial summary judgment, stating:
 
 
 4
 Defendant's motion is denied for failure to show that a [sic] genuine issue of material fact exists, or that it is entitled to partial summary judgment as a matter of law. Neither of the cases relied on by the defendant, Delaware State College v. Ricks, 449 U.S. 250 [101 S.Ct. 498, 66 L.Ed.2d 431] (1980), nor United Air Lines, Inc. v. Evans, 431 U.S. 553 [97 S.Ct. 1885, 52 L.Ed.2d 571] (1977), appears to foreclose the plaintiff's continuing violation theory. Nor has the defendant made a showing that no genuine issue of material fact exists regarding the existence of a continuing violation. For these reasons, summary judgment cannot be granted under Fed.R.Civ.P. 56.
 
 
 5
 Order, record, vol. 1, at 40-41. The case proceeded to trial.
 
 
 6
 Even though the case was tried before a jury, the continuing violation issue was never submitted to that jury. During the trial, the parties agreed that the continuing violation issue was one for the judge to decide and, accordingly, entered certain exhibits into evidence that related to the issue. The jury never saw those exhibits. At the conclusion of the trial, the case was submitted to the jury on special interrogatories, but those interrogatories included no reference to plaintiff's continuing violation claim. Neither party objected to the special interrogatories, and the jury returned a verdict for plaintiff. Thereafter, defendant moved for a judgment notwithstanding the verdict and raised, among other arguments, the timeliness issue. The district court again rejected the argument, explaining: "In my view the statute of limitations did not bar the action because the conduct complained of constituted a single, continuous, uninterrupted course of discriminatory activity from the outset to the time of trial." Order, id. at 52-53. On appeal, defendant renews its timeliness argument.
 
 
 7
 In general, a plaintiff cannot maintain an ADEA action for discriminatory acts that occurred more than 180 days (300 days under certain circumstances) before he filed his charge with the EEOC. This is true even if the discriminatory act continues to have an effect on the plaintiff within the statutory period. See Delaware State College v. Ricks, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); United Air Lines, Inc. v. Evans, 431 U.S. 553, 558-59, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977).[1] The key to recovery is for the plaintiff to show that a violation, and not just the effects of a violation, extended into the statutory period.
 
 
 8
 Under the continuing violation theory, a plaintiff who shows a continuing policy and practice that operated within the statutory period has satisfied the filing requirements. See, e.g., Higgins v. Oklahoma ex rel Okla. Employment Sec. Comm'n, 642 F.2d 1199, 1200 n. 2 (10th Cir.1981); Rich v. Martin Marietta Corp., 522 F.2d 333, 348 (10th Cir.1975). When the policy and practice is company-wide, the plaintiff can show that a violation occurred within the statutory period by showing some application of the policy within that period. Furr v. AT & T Technologies, Inc., 824 F.2d 1537, 1543 (10th Cir.1987); Abrams v. Baylor College of Medicine, 805 F.2d 528, 533-34 (5th Cir.1986). On the other hand, if the defendant can show that the policy was discontinued before the limitations period, then, as a matter of law, plaintiff's claim must be dismissed. Jewett v. International Tel. & Tel. Corp., 653 F.2d 89, 93 (3d Cir.), cert. denied, 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981).
 
 
 9
 Defendant argues that plaintiff cannot show a continuing violation because he has not alleged a company-wide policy and practice of discrimination. Defendant's interpretation of continuing violation is too narrow. "To establish a continuing violation [a plaintiff] would have to show 'a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the [limitations] period.' " Valentino v. United States Postal Serv., 674 F.2d 56, 65 (D.C.Cir.1982) (emphasis added) (quoting B. Schlei & P. Grossman, Employment Discrimination Law 232 (Supp. 1979)). The continuing violation can be either a company-wide policy of discrimination or a series of related acts taken against a single individual. "[T]he relevant distinction is between isolated and sporadic outbreaks of discrimination and a dogged pattern. Put another way, it is not the number of employees oppressed that matters, but the fundamental character of the oppression." Shehadeh v. Chesapeake & Potomac Tel. Co., 595 F.2d 711, 725 n. 73 (D.C.Cir.1978). The question in the present case thus boils down to whether sufficient evidence supports a determination that the "alleged discriminatory acts are related closely enough to constitute a continuing violation." Berry v. Board of Supervisors of L.S.U., 715 F.2d 971, 981 (5th Cir.1983). If the acts are merely individual violations, then we must remand for a determination of the amount of damages, if any, related to the acts that occurred within the statutory period. Conversely, if the acts are part of a continuing violation, then the district court decision on the statute of limitations issue must be affirmed.
 
 
 10
 Plaintiff alleges that the acts are related because they are part of defendant's plan to force plaintiff to take voluntary or involuntary retirement. The key, then, to determining whether plaintiff has shown a continuing violation is whether defendant's intent was to take any action necessary to get rid of plaintiff. The parties apparently recognized that this is a question of fact. In the stipulated pre-trial order the parties themselves listed, as a disputed fact, the question: "Did the actions of the Defendant constitute a continuing violation of the ADEA?" Record, vol. 1, at 25. The district court also recognized the issue as one of fact in its ruling on summary judgment. Although both parties and the court recognized that existence of the continuing violation may involve an issue of fact, they did not submit that issue as part of the special interrogatories given to the jury. As a result, both parties waived their right to a jury trial on that issue. See Rose Confections, Inc. v. Ambrosia Chocolate Co., 816 F.2d 381, 389 (8th Cir.1987). This circuit has specifically stated:
 
 
 11
 Rule 49(a), 28 U.S.C.A. permits the court to require a jury to return specific verdicts upon each issue of fact. These questions are to be submitted to the jury in written form, susceptible of brief answers. If in submitting these questions the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issues so omitted unless before the jury retires, he demands its submission to the jury. In case an issue of fact is omitted without such demand, the court may make a finding.
 
 
 12
 Merrill v. Beaute Vues Corp., 235 F.2d 893, 896-97 (10th Cir.1956). Defendant did not object to the special interrogatories in this case; therefore, the district court became the factfinder on the continuing violation issue. "The finding of the trial court on a factual issue absent from the special interrogatory form is subject to review pursuant to the clearly erroneous standard of Federal Rule of Civil Procedure 52(a)." Fortier v. Dona Anna Plaza Partners, 747 F.2d 1324, 1337 (10th Cir.1984). Thus, we may reverse the trial court's finding of a continuing violation only if it is clearly erroneous.
 
 
 13
 The finding is not clearly erroneous. From the beginning of the trial, plaintiff claimed that defendant's acts were all part of an overall plan to force him into voluntary or involuntary retirement. The evidence could be interpreted as showing that no discrimination occurred before plaintiff's twenty-fifth service anniversary and that the discrimination continued from that time to at least the date of trial. Defendant did, of course, present evidence of legitimate business explanations for each of the allegedly discriminatory acts. Nevertheless, the trial court could have rejected that testimony or could have found that defendant's overriding intent was to force plaintiff to retire. While we may disagree with the trial court's finding of a continuing violation, on the entire evidence we are not "left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Evidence in the record supports the district court's finding of a continuing violation. Thus, we conclude that plaintiff has shown a timely filing under section 626(d)(1).[2]
 
 II. Liability Issue
 
 14
 The special interrogatories submitted to the jury referred to five allegedly discriminatory acts: (1) refusal to promote plaintiff; (2) refusal to transfer plaintiff; (3) defendant's transfer of plaintiff to a position for which he was not qualified; (4) defendant's demotion of plaintiff or payment to him of a lower salary; and (5) defendant's subjection of plaintiff to harassment or other adverse working conditions. The jury found for plaintiff on all the acts except the refusal to promote. Defendant then moved for a judgment notwithstanding the verdict. The district court denied this motion because:
 
 
 15
 [a]ll the issues raised by the defendant ... are essentially fact questions decided by the jury on conflicting evidence. While I may have disagreed with the jury on one or more of these issues, it is simply not my function as a trial judge to second-guess a jury's decisions on fact issues where substantial evidence supports their verdict.
 
 
 16
 Order, record, vol. 1, at 53. Defendant now asks us to reverse the trial court's decision.
 
 
 17
 "[S]ince the grant of such a motion deprives the nonmoving party of a determination of the facts by a jury, judgment notwithstanding the verdict should be cautiously and sparingly granted." Joyce v. Atlantic Richfield Co., 651 F.2d 676, 680 (10th Cir.1981).
 
 
 18
 A judgment notwithstanding the verdict is appropriate only when "the evidence points but one way and is susceptible to no reasonable inferences which may sustain the position of the party against whom the motion is made." Symons v. Mueller Co., 493 F.2d 972, 976 (10th Cir.1974). In making this evaluation, the court must construe the evidence and inferences most favorably to the nonmoving party, id., and "cannot weigh the evidence, consider the credibility of witnesses or substitute its judgment for that of the jury." Joyce v. Atlantic Richfield Co., 651 F.2d 676, 680 n. 2 (10th Cir.1981).
 
 
 19
 EEOC v. Prudential Fed. Sav. & Loan Ass'n, 763 F.2d 1166, 1171 (10th Cir.), cert. denied, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985). Thus, this court and the district court, in deciding whether defendant is entitled to a judgment notwithstanding the verdict must view the evidence and inferences from the evidence in a light most favorable to plaintiff.
 
 
 20
 To support a finding of discrimination, plaintiff need not show that "age was the sole motivating factor in the employment decision"; rather, he need only show "that age was the factor that made a difference." Id. at 1170. Plaintiff has satisfied this requirement. He testified that his supervisors began to discriminate against him because of his age as of his twenty-fifth service anniversary. Specifically, plaintiff testified that on his twenty-fifth anniversary, his supervisor asked him how old he was and when he was going to retire. When plaintiff replied that he would remain with the company until he was 70, his supervisor stated that he had no plans for plaintiff and stated that he had "a lot of younger people that could offer more to the job." Record, vol. 2, at 92. Plaintiff then testified that immediately following this meeting, defendant's discriminatory acts began. The first alleged act of discrimination, which the jury rejected, was the defendant's refusal to promote plaintiff. Plaintiff testified that prior to his service anniversary meeting and again at that meeting he requested a promotion. Defendant denied the promotion, but at trial presented evidence showing that no position was available in plaintiff's department. Apparently, the jury believed that even if plaintiff had been younger he would not have been promoted.
 
 
 21
 The jury found for plaintiff on all the other allegedly discriminatory acts. Plaintiff testified that after he was told no position was available in his department, he requested a transfer to another department in which a position was available. The jury, even if it believed defendant's explanation for this refusal, could have believed that the refusal to transfer was, at least in part, motivated by plaintiff's age. In fact, plaintiff testified that not only had his supervisor told him he was too old to continue working productively for defendant, but that defendant continued to offer plaintiff early retirement. According to plaintiff, the early retirement program was for departments with an "employee surplus" and his department had no surplus. Plaintiff's supervisors, while they contested plaintiff's explanation of the early retirement program, admitted that if plaintiff had retired, a new employee would have been hired to replace him.
 
 
 22
 The refusal to transfer him and the offers of early retirement were not the only evidence of discrimination. Plaintiff also testified that after he was refused a transfer, the conditions on his job began to deteriorate. Defendant reduced the plaintiff's autonomy and limited his dealings with upper levels of management. After plaintiff had refused the second early retirement offer, defendant transferred him to the accounting department. Plaintiff offered evidence to show that he did not meet the written qualifications for his new position and that defendant ignored his pleas to remain in his old position. Defendant claimed that the transfer was only a minor part of a reorganization of the business methods and accounting departments. However, plaintiff was the oldest employee transferred, and he testified that he was the only employee transferred into a new field. In addition, plaintiff claimed that immediately after his transfer defendant increased the responsibilities connected with the new position. According to plaintiff's testimony, that transfer was a part of the overall plan to drive him from the company. In fact, plaintiff testified that in this new position he would be subject to greater scrutiny; and he thought that the transfer was the first step in an attempt to build a record that would justify his involuntary dismissal. This transfer also led to the alleged demotion and decrease in salary. Prior to the transfer plaintiff had been in a PAE level 3 position, and his new position was PAE level 2. Defendant claimed that, despite the transfer, plaintiff retained his PAE level 3 standing and the higher salary. Plaintiff presented evidence to show that his salary had moved from level 3 to level 2. Defendant contested this claim by showing that each level actually involved a range of salaries and that the lower end of the level 3 range overlapped with the upper end of the level 2 range. The jury apparently rejected defendant's explanations on the transfer and the changes in compensation--finding that defendant discriminated against plaintiff in both instances. Substantial evidence in the record supports this finding.
 
 
 23
 Finally, plaintiff contends that once he was transferred to the new position he was subject to harassment and other adverse working conditions. Specifically, plaintiff stated that he was not trained for the new job or given overtime to learn it. In addition, he was arbitrarily denied leave for a vacation and constantly criticized by his supervisors. Plaintiff testified that he was treated differently than younger employees in the same department. While defendant presented testimony refuting plaintiff's claims, plaintiff's testimony provides substantial evidence to support the jury finding of harassment or other adverse working conditions.
 
 
 24
 The jury verdict must be sustained. While we may disagree with some of the jury's findings, we may not overrule its factfinding power. The district court correctly denied defendant's motion for a judgment notwithstanding the verdict.
 
 III. Damages Issues
 
 25
 The parties agreed to try the damages issues before the district court without a jury. After hearing the evidence, the court awarded plaintiff lost wages, adjustments to the pension plan, payment for overtime worked but not paid, liquidated damages, court costs and attorney's fees. The court refused plaintiff's request for front pay, or future wages, and punitive damages. Defendant appeals, claiming that the court should not have awarded any recovery for the unpaid overtime. Plaintiff appeals on four issues--amount of overtime awarded, wage rate, front pay and punitive damages.
 
 A. Overtime Award
 
 26
 After hearing testimony and reviewing supporting exhibits, the court awarded plaintiff payment for the following overtime:
 
 
 27
 Year Hours
---- -------
1981 15 1/2
1982 119 3/4
1983 176 1/4
1984 26 1/4
 
 
 28
 Defendant contends that any award for unpaid overtime is erroneous because plaintiff knew of defendant's policy to pay only for authorized overtime. Plaintiff admits he knew of the policy and admits that he did work some authorized overtime, for which he was paid. However, he claims that he did not request additional overtime because he knew defendant would not grant the request and because he feared that defendant might use that request to show that plaintiff's performance was unsatisfactory.
 
 
 29
 Plaintiff asserted that he would not have been able to complete the tasks given to him by defendant if he had not worked the overtime. If the trial court accepted this testimony, it could have found that the overtime resulted from the age discrimination the jury found. Furthermore, plaintiff testified that his supervisors regularly criticized him for being slow and for finishing his tasks late. In fact, on more than one instance he claimed that when he requested overtime, his supervisor stated that if he were doing his work properly he would not need overtime. During this time, plaintiff testified, he was also worried about maintaining his salary level.
 
 
 30
 The purpose behind the award of damages under the ADEA is to compensate plaintiff for the harm suffered as a result of the age discrimination. If plaintiff was required to work overtime as a result of defendant's discriminatory transfer, then plaintiff should be compensated for that overtime. In addition, plaintiff does not need to show he requested overtime if he presents a reasonable excuse for his failure to request the overtime. The determination of whether the overtime was a result of the discriminatory transfer and the reasonableness of plaintiff's failure to request overtime are fact questions for the district court and are subject to the clearly erroneous standard of review. See City of Bessemer City, 470 U.S. at 573, 105 S.Ct. at 1511; Fed.R.Civ.P. 52(a). The finding that plaintiff is entitled to recover for unpaid overtime is not clearly erroneous. The court could have found that plaintiff was required to work overtime because of the discriminatory transfer. It could also have decided that plaintiff's fear of retaliation--combined with his belief that defendant would not grant the overtime even if it were requested--justified the failure to request overtime.
 
 
 31
 The district court, however, did not award plaintiff payment for the total hours he claimed. Plaintiff contends that the failure to award recovery for the total hours is erroneous. He claims that starting in 1981 he was required to work extra overtime. Some of the overtime was documented; but in addition to the documented overtime, plaintiff maintains that he came to work one hour early every day and worked through his one-half hour lunch break. Combining the documented and undocumented overtime which plaintiff worked without approval or payment, plaintiff seeks recovery for the following hours.
 
 
 32
 Year Documented Undocumented Total
---- ---------- ------------ -------
1981 15 1/2 225 240 1/2
1982 119 3/4 129 248 3/4
1983 352 1/2 4 1/2 357
1984 52 1/2 ---- 52 1/2
 
 
 33
 Defendant contested these totals on two grounds. First, defendant claimed that plaintiff did not need any extra overtime because he would have been authorized the overtime required to learn his new job. Second, defendant claimed that all the overtime listed by plaintiff was not spent learning his new job, or even all spent at defendant's office.
 
 
 34
 The testimony on the amount of overtime was conflicting. Plaintiff's supervisors testified that they often saw plaintiff at his desk early, but stated he was sometimes working on a personal matter and not company business. Plaintiff testified that every hour spent on the job was spent working for the benefit of defendant. In a compromise of the two positions, the trial court awarded plaintiff recovery for all his documented hours in 1981 and 1982 and half the documented hours in 1983 and 1984. This award is not clearly erroneous. The trial court could have rejected plaintiff's testimony on all undocumented hours--plaintiff did not even see the importance of recording those hours at the time they accrued, and this may have resulted in an inference by the trial court that the hours did not benefit defendant. Furthermore, the basis for the recovery was that plaintiff put in overtime to learn his new job. The transfer occurred in 1981, and the trial court could infer that by 1983 and 1984, plaintiff had learned his job and less overtime was required. Furthermore, the trial court could have rejected some of the exhibits presented to support the documented overtime. Viewing the record as a whole, we are not convinced that the court's overtime award is incorrect; it is sustained.
 
 B. Wage Rate
 
 35
 As a professional administrative employee, plaintiff's salary was set under defendant's management salary plan. This plan provides that plaintiff's salary will be set by multiplying a base rate, called the "control rate," by a specific percentage. The percentage depends on plaintiff's performance appraisals. Both parties agree that the wage rate for plaintiff's back wages and his overtime pay can be set by computing the appropriate percentage and multiplying it by the control rate for the disputed period. The only dispute is as to the appropriate multiplier.
 
 
 36
 Plaintiff testified that the multiplier should have been 113%, the rate he enjoyed for at least two years before December 1979. Defendant made two alternative arguments. First, it argued that the appropriate multiplier was 108 1/2%, the rate plaintiff enjoyed immediately prior to the trial in this case. Second, defendant argued that, even if the court accepted plaintiff's argument that the 1979 rate should apply, the 113% should be reduced to compensate for a one-time two percent increase that was given to all employees in 1979. Based on this conflicting testimony, the district court found that the appropriate multiplier was 112%. Plaintiff appeals that finding.
 
 
 37
 By failing to appeal the issue, defendant has conceded that the 1979 multiplier, the rate plaintiff enjoyed prior to any discrimination, is the appropriate multiplier. Accordingly, the contest is over the 1979 rate. Defendant claimed that at least two percent of the rate in effect in 1979 was the result of a company-wide increase in salary and was not related to plaintiff's performance. The district court compromised plaintiff's claim of 113% with defendant's claim of something approximately two percent less. This finding is not clearly erroneous and, therefore, must be affirmed.
 
 C. Front Pay
 
 38
 Plaintiff specifically requested front pay--or payment for future wages--but the district court, relying on language in Perrell v. FinanceAmerica Corp., 726 F.2d 654, 657 (10th Cir.1984), held that as a matter of law front pay is not available under the ADEA. After the district court's order, we issued an opinion holding that, under certain circumstances, front pay is available. EEOC v. Prudential Fed. Sav. & Loan Ass'n, 741 F.2d 1225, 1232 (10th Cir.1984) (Prudential I ), vacated on other grounds, 469 U.S. 1154, 105 S.Ct. 896, 83 L.Ed.2d 913 (1985). Every other circuit court that has decided the issue agrees. McNeil v. Economics Laboratory, Inc., 800 F.2d 111, 118 (7th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987); Wildman v. Lerner Stores Corp., 771 F.2d 605, 614-16 (1st Cir.1985); Maxfield v. Sinclair Int'l, 766 F.2d 788, 795-97 (3d Cir.1985), cert. denied, 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986); O'Donnell v. Georgia Osteopathic Hosp., Inc., 748 F.2d 1543, 1550-52 (11th Cir.1984); Davis v. Combustion Eng'g Inc., 742 F.2d 916, 923 (6th Cir.1984); Whittlesey v. Union Carbide Corp., 742 F.2d 724, 728-29 (2d Cir.1984); Gibson v. Mohawk Rubber Co., 695 F.2d 1093, 1100 (8th Cir.1982); Cancellier v. Federated Dep't Stores, 672 F.2d 1312, 1319 (9th Cir.), cert. denied, 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982). Even so, front pay is merely a substitute for reinstatement, and this circuit has held that reinstatement is preferable. Prudential Fed. Sav. & Loan Ass'n, 763 F.2d at 1172 (Prudential II ); Blim v. Western Elec. Co., 731 F.2d 1473, 1479 (10th Cir.), cert. denied, 469 U.S. 874, 105 S.Ct. 233, 83 L.Ed.2d 161 (1984); see also Smith v. Consolidated Mut. Water Co., 787 F.2d 1441, 1443 (10th Cir.1986) (grant of front pay affirmed because trial court articulated reasons for favoring front pay over reinstatement). Defendant argues that, although front pay is available under the ADEA, plaintiff, under the facts of this case, is not entitled to an award of front pay.
 
 
 39
 In a settlement agreement entered into between the parties, plaintiff did accept retirement from defendant's employment. That settlement, however, was entered into on an agreement that it would not affect the parties' rights on appeal. Plaintiff may, in fact, be entitled to front pay. "[W]hen the employer has exhibited such extreme hostility that, as a practical matter, a productive and amicable working relationship would be impossible," reinstatement must give way to front pay. Prudential II, 763 F.2d at 1172. Because the court decided as a matter of law that front pay was not available under the ADEA, neither party presented evidence as to the working conditions that might exist if plaintiff were reinstated. Thus, we cannot determine whether this is an appropriate case for front pay. The matter is remanded to the district court for a finding on the availability of front pay.
 
 D. Punitive Damages
 
 40
 The district court also ruled that, as a matter of law, plaintiff could not recover punitive damages in an ADEA case. Although this court has not specifically reached the issue, all other circuits that have, deny punitive damages in ADEA cases. See Johnson v. Al Tech Specialties Steel Corp., 731 F.2d 143, 146-48 (2d Cir.1984); Pfeiffer v. Essex Wire Corp., 682 F.2d 684, 686-88 (7th Cir.), cert. denied, 459 U.S. 1039, 103 S.Ct. 453, 74 L.Ed.2d 606 (1982); Kelly v. American Standard, Inc., 640 F.2d 974, 979 (9th Cir.1981); Walker v. Pettit Constr. Co., 605 F.2d 128, 130 (4th Cir.1979); Dean v. American Sec. Ins. Co., 559 F.2d 1036, 1039-40 (5th Cir.1977), cert. denied, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978). We see two persuasive reasons to join these circuits in holding that punitive damages are not available under the ADEA.
 
 
 41
 First, the statute itself indicates Congress did not intend to provide punitive damages under the ADEA. Congress did not include punitive damages among those specifically recoverable. Furthermore, in section 626(b), Congress provided that in cases of willful violations of the ADEA the court would order liquidated damages. These liquidated damages serve to punish those who engage in willful violations--the same purpose that would be served by providing punitive damages. See Kelly, 640 F.2d at 979; Walker, 605 F.2d at 130; Dean, 559 F.2d at 1039. Thus, providing punitive damages under the ADEA would, in effect, grant plaintiff a double recovery. Congress could not have had this intention.
 
 
 42
 Second, precluding punitive damages facilitates the reconciliation process provided for under the ADEA. The broad purpose of the ADEA is to insure that older individuals who desire work will not be denied employment. Blim, 731 F.2d at 1478. In addition, prior to any court action on an ADEA claim, the plaintiff and his employer must go through a reconciliation process carried out by the EEOC. Through this process the agency can obtain efficient solutions to problems of age discrimination without resort to litigation. In agency proceedings, punitive damages are not available; thus, an ADEA plaintiff who may be able to recover punitive damages in a court action would be less inclined to seek reconciliation at the agency level. In fact, he might avoid contractual claims and seek to thwart reconciliation in order to reach the courts. Pfeiffer, 682 F.2d at 686-87. If punitive damages are not available, plaintiffs will more likely seek contractual rights and more willingly participate in agency reconciliation efforts. We therefore conclude that punitive damages are not available under the ADEA.
 
 
 43
 AFFIRMED in part and REVERSED and REMANDED in part, with instructions to proceed in a manner consistent with this opinion.
 
 
 
 [1]
 Evans and Ricks are Title VII cases. "Because of the similarities between the ADEA and Title VII of the Civil Rights Act of 1964, courts sometimes refer to interpretations of provisions in Title VII for assistance in defining analogous sections of the ADEA." Dartt v. Shell Oil Co., 539 F.2d 1256, 1259 (10th Cir.1976), aff'd per curiam, 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977). As filing requirements and the application of the continuing violation theory are the same for ADEA and Title VII cases, we use Title VII cases throughout this section
 
 
 [2]
 Because we conclude that plaintiff made a timely EEOC filing, we do not reach his equitable tolling argument