**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 4 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DELISA ATCHLEY,

       Plaintiff/Appellee,

v.

THE NORDAM GROUP, INC.,

       Defendant/Third-Party
       Plaintiff/Appellant,

v.

DESIGN SUPPORT SERVICES, INC.,

       Third-Party Defendant/Appellee.

No. 98-5006, 98-5020,
98-5087, 98-5125

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 96-CV-344-C)**

Stephen L. Andrew (D. Kevin Ikenberry, with him on the briefs), Stephen L. Andrew &
Associates, Tulsa, Oklahoma, for Appellant, The Nordam Group, Inc.

Thomas Dunn Robertson (John E. Harper, Jr., with him on the brief), Tulsa, Oklahoma,
for Third-Party Appellee, Design Support Services, Inc.

Kevin R. Kelley, Tulsa, Oklahoma, for Appellee, Delisa Atchley.

Before **PORFILIO**, **MCKAY,** and **TACHA**, Circuit Judges.

_____

**PORFILIO**, Circuit Judge.

_____

One month prior to giving birth, Delisa Atchley took maternity leave from her job at The Nordam Group and received assurances from Nordam managers she could return to the position at the completion of her leave. When she tried to return as promised, she learned there was no place for her. After several fruitless attempts to find another position at Nordam or elsewhere in Oklahoma, Ms. Atchley filed suit against Nordam alleging violations of the Pregnancy Discrimination Act, Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000, and the Family and Medical Leave Act, 29 U.S.C. § 2601. She prevailed before a jury, and in a thorough order, the district court denied Nordam's motion for judgment as a matter of law, as well as its motion for a new trial. Nordam appeals, and we affirm.[1]

The Nordam Group is a Tulsa, Oklahoma, company that employs over 1000 people in the aviation industry. Sometime prior to 1987, Nordam's Aircraft Modification Division (AMD) began development of "hush kits" to reduce airplane noise. To aid in this project, Design Support Services (DSS) provided a significant number of engineers

_____

[1]Appeals in 98-5006, 98-5020, 98-5087, and 98-5125 have been consolidated for disposition.

and other employees. A written agreement between Nordam and DSS established the relationship between the entities and, in part, provided Nordam would compensate DSS for its actual costs plus a markup. The agreement also specified "personnel furnished [by DSS] will at all times be considered [DSS] employees." DSS would have responsibility for "payment of wages, compensation, hiring and firing" of those employees furnished by DSS. Furthermore, "in no instances or sense shall [those employees] be construed as [Nordam] employees." DSS also agreed to "indemnify [Nordam] against any and all damages, expenses, liabilities, and claims arising from sickness, injuries to, death, of any person or damage to, or loss of any property caused by the negligence of [DSS] employees."

Ms. Atchley learned about the position of document clerk at Nordam through her mother, Donna Selan, who worked on the hush kit project at Nordam and received her paycheck from DSS. Nordam manager, John Calvert, interviewed Ms. Atchley, who had previously worked for Nordam in a different capacity, and hired her through DSS. DSS faxed to Ms. Atchley at the Nordam facility a Temporary Employee Agreement which indicated she was on temporary assignment to Nordam and would be paid an hourly wage of $6.77. Vacation and holiday benefits would be paid by DSS. Ms. Atchley testified at the time of the agreement she understood she "would be working through DSS for Nordam," and she would be ineligible for Nordam health insurance, 401K, and profit sharing benefits. During her employment, Ms. Atchley received her paychecks, including

a raise, from DSS, but all other job contacts, such as job supervision and evaluations, were with Nordam.

After two years, Ms. Atchley took over document control responsibilities for the entire Aircraft Modification Division, the division running the hush kit project. Eight months later, on September 30, 1993, Ms. Atchley found out she was pregnant, and on March 14, 1994, gave Nordam manager Calvert a handwritten note informing him she would be taking maternity leave beginning May 13, 1994. At the bottom of the note she queried, "John, is this all you need from me." Calvert responded, "Yes." On May 13, Ms. Atchley began her leave, intending to return six weeks after the birth of her child.

While Ms. Atchley was away, Nordam experienced what it called "structural changes." The hush kit project ended, and Nordam purchased a company called BizJet. Nordam's Director of Engineering Services made a job requisition for a document control clerk to support the new enterprise. In addition, Nordam merged its AMD and manufacturing divisions. A long-time Nordam employee was placed in charge of document control for the new division.

When Ms. Atchley informed Nordam manager Calvert she was ready to come back to work, Calvert responded he needed to check her status with Mr. Gallagher because the organizational changes had made her position unsettled. On July 25, 1994, Ms. Atchley was informed her services were no longer required in the document control position. She

subsequently tried to obtain other employment with Nordam but was told no positions for which she was qualified were available.

Ms. Atchley ultimately filed this action in the district court naming only Nordam as a defendant. After Nordam, in turn, filed a third-party complaint against DSS, claiming DSS was the true employer of Ms. Atchley, she filed an amended complaint naming DSS as a defendant. The court denied all motions for summary judgment, and the case proceeded to a jury trial.

At the close of Ms. Atchley's evidence, the court found Nordam was Atchley's statutory employer under Title VII and granted DSS' motion for a directed verdict. The jury returned a verdict in favor of Ms. Atchley on her Title VII and FMLA claims, and awarded her $9,000 in back pay, $8,000 for emotional distress and other nonpecuniary losses, $9,000 for liquidated damages on the FMLA claim, and $65,000 in punitive damages under Title VII.

Nordam filed a motion for judgment as a matter of law or, in the alternative, a new trial. Nordam sought a new trial on grounds either DSS should not have been dismissed or the testimony of plaintiff's witness, Dianna McCuddy, should not have been allowed. The district court denied both motions, and Nordam filed this appeal.

Nordam argues: (I) there was no evidence to support the award of punitive damages; (II) the evidence was insufficient to support a finding of liability under Title VII; (III) there was no evidence to support an award of damages for emotional distress;

(IV) Ms. Atchley failed to prove a claim under the FMLA; (V) the district court lacked subject matter jurisdiction over the Title VII claim; (VI) the award of liquidated and punitive damages constituted an impermissible double recovery; and (VII) DSS should not have been dismissed at the conclusion of evidence.

We review *de novo* a district court's disposition of a motion for judgment as a matter of law, applying the same standard as the district court. *See Mason v. Oklahoma Turnpike Auth.*, 115 F.3d 1442, 1450 (10th Cir. 1997). Judgment as a matter of law is warranted "only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." *Id.* ("We do not weigh the evidence, pass on the credibility of the witnesses, or substitute our conclusions for [those] of the jury. However, we must enter judgment as a matter of law in favor of the moving party if 'there is no legally sufficient evidentiary basis ... with respect to a claim or defense ... under the controlling law.'"). In conducting our review, "[t]he evidence and inferences therefrom must be construed most favorably to the nonmoving party." *Wolfgang v. Mid-America Motorsports, Inc.*, 111 F.3d 1515, 1522 (10th Cir. 1997).

**I.**

Nordam argues Ms. Atchley was not entitled to an award of punitive damages because she did not show egregious discrimination. Ms. Atchley responds Nordam failed to preserve the issue for appeal because its Rule 50 motion dealt only with Nordam's

restructuring argument and did not raise whether showing egregious discrimination is even required in Title VII claims.

To preserve an issue for a renewed post-trial motion under Fed. R. Civ. P. 50(b), the movant must have made a proper motion pursuant to Rule 50, and the motion must be made with enough specificity to allow the non-movant an opportunity to cure possible defects in proof which might otherwise make its case legally insufficient.  *See Lightning Lube Inc. v. Witco Corp.*, 4 F.3d 1153, 1172-73 (3rd Cir. 1993); *see also First Security Bank of Beaver, Okla. v. Taylor*, 964 F.2d 1053, 1056-57 (10th Cir. 1992).

Were this failure to preserve not a problem for Nordam, its acceptance of the instruction on punitive damages is.  The instruction advised the jury it could award punitive damages pursuant to 42 U.S.C. § 1981a(b)(1) upon a showing Nordam engaged in pregnancy discrimination "with malice or reckless indifference to her federally protected rights."  Nordam did not challenge the jury instruction at trial and does not do so on appeal, but rather contends punitive damages were not warranted by the facts because they did not show egregious discrimination.  The failure to object deprives Nordam of the right to challenge the legal standard given to the jury; and it can only argue whether the jury properly applied the instruction to the facts.  *See Will v. Comprehensive Accounting Corp.*, 776 F.2d 655, 675 (7th Cir. 1985) ("Once the law of the case is settled by failure to object to the instructions, the parties may argue only that the jury did not play its proper part.  Because the jury's part is to apply the instructions to the facts, we may

scrutinize its conclusions only to find out whether it did so."); ***Kientzy v. McDonnell Douglas Corp.***, 990 F.2d 1051, 1062 (8th Cir. 1993) (employer waived allegation of error with regard to punitive damage instruction by failing to object to instruction). Because the issue of the propriety of punitive damages is not properly preserved for appeal, we shall not consider it further.

## II.

In its motion for judgment as a matter of law, Nordam argued the evidence was insufficient to support a finding of liability under Title VII. The district court decided this issue against Nordam in its April 22, 1998 order. On appeal, Nordam argues Title VII does not itself mandate employers provide maternity leave; rather, it requires an employer to hold open the job of an employee who is temporarily disabled by pregnancy-related conditions on the same basis as it holds open jobs of employees on sick or disability leave for other reasons. Nordam states there was no evidence of other individuals like Ms. Atchley who were employed through DSS but received a leave of absence from Nordam. Therefore, there could be no evidence Ms. Atchley was treated differently from other individuals. The district court did not miss the call when it labeled this argument "disingenuous and wholly without merit."

We have held, "a pregnancy discrimination claim is analyzed the same as other Title VII claims." ***EEOC v. Ackerman, Hood & McQueen***, 956 F.2d 944, 947 (10th Cir. 1992). Thus, when assessing the plaintiff's evidence in an employment discrimination

case, the court follows the three stage analysis outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-56 (1981).  At the first stage, the plaintiff must prove a prima facie case of discrimination.  She must show:  (1) she is within the protected class; (2) she was doing satisfactory work; (3) she was discharged; and (4) her position remained open and was ultimately filled by a nonpregnant employee.  *See McDonnell Douglas*, 41 U.S. at 802.  *See also Burdine*, 450 U.S. at 253; *Ackerman*, 956 F.2d at 947-48.

If the plaintiff satisfies the prima facie requirements, then the case enters the next stage.  In this second stage, the burden of production moves to the defendant.  If the defendant articulates a legitimate, nondiscriminatory reason for its action, then the burden of persuasion moves back to the plaintiff.  *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 529 (10th Cir. 1994).  In this third stage of the discrimination analysis, the plaintiff must show pregnancy was a determinative factor in the defendant's employment decision, or show the defendant's explanation for its action was merely pretext.  Failure to come forward with evidence of pretext after the employer articulates a legitimate nondiscriminatory reason for its action will entitle the defendant to judgment.

Contrary to Nordam's contention, the district court noted "evidence was introduced which showed that two other persons whom Nordam employed 'through' DSS, Carol Lane and David Lafevers, were granted leave for non-pregnancy related ailments and were returned to their positions thereafter."  The district court also rejected

Nordam's attempt to use corporate restructuring as a nondiscriminatory reason for Ms. Atchley's discharge. Examination of the evidence revealed similarly situated non-pregnant employees were granted leave and reinstated, and Ms. Atchley was the *sole* employee displaced by Nordam's "restructuring." ***See Quaratino v. Tiffany & Co.***, 71 F.3d 58, 65 (2d Cir. 1995) ("Employers have the right to restructure jobs and job responsibilities, but they cannot use that process to implement discriminatory objectives.… [And] an employee may always show that her employer's decisions on restructuring – as applied to her – were made to displace her for impermissible reasons such as taking maternity."). Further evidence of Nordam's discriminatory practices was presented by plaintiff's witness, Diana McCuddy, who testified she, too, was treated in a discriminatory manner after informing Nordam she was pregnant. ***See Burdine***, 450 U.S. at 256 (intentional discrimination may be proved indirectly by showing the employer's proffered explanation is unworthy of credence). The district court found Ms. McCuddy's testimony particularly relevant because she was the only other female known to be pregnant under the supervision of Calvert and Gallagher. ***See Spulak v. K-Mart Corp.***, 894 F.2d 1150, 1156 (10th Cir. 1990) (testimony of other employees about their treatment by defendant is relevant to issue of the employer's discriminatory intent). Construing the evidence in Ms. Atchley's favor, we cannot say the district court erred in refusing to upset the jury verdict on this issue.

**III.**

Nordam next argues there was no evidence to support an award of $8,000 damages for emotional distress. Nordam raised this argument in its motion for judgment as a matter of law, and the district court expressly rejected it. Here, Nordam argues the distress suffered by Ms. Atchley, if any, did not rise to the level of that required in *Carey v. Piphus*, 435 U.S. 247, 263-64 (1978) ("distress is a personal injury familiar to the law, customarily proved by showing the nature and circumstances of the wrong and its effect on the plaintiff"), and the EEOC Policy Guide on Compensatory and Punitive Damages Under the 1991 Civil Rights Act, Fair Employment Practices Manual (BNA) 405:7091, 7096 (July 7, 1992) ("Emotional harm will not be presumed simply because the complaining party is a victim of discrimination. The existence, nature, and severity of emotional harm must be proved. Emotional harm may manifest itself, for example, as sleeplessness, emotional distress, loss of self esteem, excessive fatigue, or a nervous breakdown.").

The district court, however, was "unpersuaded as there was testimony relating directly to the EEOC factors as warranting an award." The testimonial evidence showed the offending conduct caused strain to Ms. Atchley's familial and marital relationships. She suffered further stress and anxiety when she undertook a lengthy job search and ultimately had to move out of state in search of employment.[2] Nordam conceded

---

[2] The move took Ms. Atchley, her husband, and her 1-year old child away from extended families and support systems on both sides.

plaintiff's testimony alone may serve as evidence of emotional distress, *see Price v. City of Charlotte*, 93 F.3d 1241, 1254 (4th Cir. 1996), when a "genuine injury" is at issue. *Carey*, 435 U.S. at 264. Given its careful recounting of the evidence and the applicable law, we cannot say the district court erred in finding itself "unable to conclude that the jury's damages award is contrary to the evidence as the issue of emotional distress is easily understood by the jury." *See Mason*, 115 F.3d at 1456.[3]

## IV.

Nordam next argues Ms. Atchley failed to prove a claim under the FMLA because she did not prove a serious medical condition and she had no right of reinstatement.[4] The district court rejected these as grounds for Nordam's motion because Nordam had not raised them at trial. Nordam contends the burden was on Ms. Atchley to establish a claim under the FMLA and it had no duty to raise affirmative defenses. We review the district court's decision on timeliness of the claims for abuse of discretion, *R.L. Clark Drilling Contractors, Inc. v. Schramm, Inc.*, 835 F.2d 1306, 1307 (10th Cir. 1987), and review the merits under the already articulated JNOV standard.

---

[3] The court also noted, "the award of $8,000 is rather modest especially when considering the conduct in question. The court therefore is unable to conclude that such an award was unsupported by the evidence."

[4] In Nordam's words, "[A]ccording to Atchley, *she had the right to sit home for five months and do nothing*, and wait to be recalled." (emphasis added). While advocacy of a client's interest is one thing, brash distortion is another. This blunderbuss shot goes beyond the bounds of advocacy and amounts to a dehumanizing personal attack predicated on an intentional distortion of Ms. Atchley's legal position. Such is not the stuff of persuasive advocacy.

In reviewing the motion for judgment as a matter of law, the district court noted: "Nordam asserts that Atchley did not prove that she suffered from a serious health condition. As authority, Nordam cites an unreported district court case, **Dormeyer v. Comerica Bank – Illinois**, 1997 WL 403697, at *3 (N.D. Ill. July 15, 1997), which [held] 'pregnancy per se [sic] is not a serious health condition under the FMLA.'" The court did not consider the merits of this argument because the claim was not included in the pretrial order, nor was it raised at any other time during the proceedings. **See** Fed. R. Civ. P. 16(e); **R.L. Clark**, 835 F.2d at 1308 ("a pretrial order measures the dimensions of the law suit, both in the trial court and on appeal"). Nordam did include in the pretrial order, as a fact to be resolved, whether "Plaintiff proved that her serious medical condition of pregnancy, and the time from work that she had to miss due to that condition, caused Nordam not to reinstate her to employment." Indeed, as the issues for trial were set forth in the pretrial order, Nordam conceded pregnancy was a serious medical condition, and the only issue preserved was whether that condition caused her job loss.

We find no support for Nordam's contention Ms. Atchley's duty to prove pregnancy is a serious medical condition under the FMLA nullifies Nordam's duty to raise at trial issues for appeal. Various district courts have, like **Dormeyer**, held a pregnant employee denied maternity leave or a reduced work schedule during her pregnancy does not have a claim under the FMLA unless there is evidence from which a reasonable jury could find the pregnancy and related conditions kept her from performing

the functions of her job.  ***See Gudenkauf v. Stauffer Communications***, 922 F. Supp. 465, 475 (D. Kan. 1996).  But these cases are not supportive of the position now advocated by Nordam.

Further, Ms. Atchley argues on appeal we can affirm on grounds not relied upon by the district court, and the record shows sufficient evidence she suffered a serious prenatal health condition.  ***See Patterson v. Xerox Corp.***, 901 F. Supp. 274, 278 (N.D. Ill. 1995) (back pain from combination of pregnancy and prior back injury suffice to establish disability under more stringent standard of ADA).  In the final weeks of her pregnancy Ms. Atchley suffered Braxton-Hicks contractions, stress, swollen feet, and lower back pain, all of which affected her job performance.  Her doctor had requested she obtain reduced hours, and Nordam manager Calvert agreed to reduced hours without medical documentation.  Ms. Atchley and Calvert's testimony showed Calvert also gave her permission to take the pregnancy leave without further documentation; therefore, he had no reason to doubt her condition and they both understood her condition allowed her to take the leave.  This case is distinguishable from ***Gudenkauf***, 922 F. Supp. at 475-76, in which defendant raised plaintiff's ability to perform job functions as a defense, and plaintiff's assertions of inability to work were contradicted at trial.  Finally, Ms. Atchley did give birth on June 12, and spent the subsequent month caring for her infant in accordance with FMLA, 29 U.S.C. § 2612 (a)(1)(A) (allowing for leave "because of the birth of a son or daughter of the employee and in order to care for such son or daughter").

- 14 -

Nordam also contends Ms. Atchley had no right of reinstatement because her position had been eliminated and FMLA does not confer rights greater than she would have enjoyed if she never went on leave. The jury did not accept this argument -- probably because Ms. Atchley was the *only* employee affected by the so-called restructuring, and in the months when Ms. Atchley was looking for a new job, Nordam hired another document clerk, Melinda Ruby-Gruner. Although there is some suggestion the new clerk had greater computer skills than Ms. Atchley, Nordam states in its brief "[Ruby-Gruner's] duties with regard to the Rohr documents were similar to those that had been performed by Ms. Atchley with regard to the hush kit documents."

While neither party's arguments are very persuasive on the question of whether Ms. Atchley's position was eliminated, we find ourselves in the position that does not require reversal of the district court on this issue. Indeed, we see no abuse of discretion in the court's finding Nordam's argument was untimely. Moreover, even if the court had addressed the question on the merits, the evidence is not so overwhelmingly in Nordam's favor the district court would have been compelled to grant the motion for judgment as a matter of law.

## V.

Nordam's next argument is the district court lacked subject matter jurisdiction over the Title VII claim because Ms. Atchley failed to exhaust her administrative remedies by not providing EEOC with all relevant information regarding Nordam. The district court

was unmoved by this argument. It acknowledged the requirement of exhausting administrative remedies, *see Khader v. Aspin*, 1 F.3d 968, 970-71 (10th Cir. 1993), but did not agree Nordam showed Ms. Atchley failed to exhaust hers. Presumably, Nordam is arguing, in accordance with its position at trial, that Ms. Atchley failed to inform the EEOC she held a "temporary position" meaning she had two employers; and thus, DSS was the proper defendant in this suit. This argument was unavailing because the district court had already concluded as a matter of law Nordam was the statutory employer under Title VII, and the evidence clearly showed Ms. Atchley's full cooperation with EEOC. Again, the evidence does not weigh so heavily in Nordam's favor that the district court should have granted judgment as a matter of law for Nordam.

## VI.

Nordam next contends the award of liquidated and punitive damages constitutes an impermissible double recovery. *See Mason*, 115 F.3d at 1459 ("double recovery is precluded when alternative theories seeking the same relief are pled and tried together"). The jury awarded Ms. Atchley $65,000 in punitive damages under Title VII and $9,000 in liquidated damages under FMLA. Nordam argues the liquidated damage provision serves to punish those who violate the FMLA and in this case it allegedly violated FMLA by failing to reinstate Ms. Atchley after the birth of her child. Similarly, punitive damages under Title VII punished Nordam for failing to reinstate her after giving birth. Relying on

*Bruno v. Western Electric Co.*, 829 F.2d 957 (10th Cir. 1987), Nordam contends awarding liquidated *and* punitive damages was disallowed.

Ms. Atchley first points out *Bruno* is inapplicable because it was decided under the Age Discrimination and Employment Act which provided expressly for liquidated damages and was silent as to punitive. Second, *Bruno* did not involve recovery for wrongs under two separate acts. *See* 89 F.2d at 967; *see also Goodrich v. International Bhd. of Elec. Workers*, 712 F.2d 1488, 1490 n.2 (D.C. Cir. 1983) ("A plaintiff may be awarded monetary relief under both statutes [Equal Pay Act and Title VII of the Civil Rights Act] provided that each is satisfied and the plaintiff does not recover for the same wrong under both provisions."). The misconduct under Title VII was against Ms. Atchley in comparison to non-pregnant employees, whereas the misconduct under the FMLA was for failing to comply with the statutory mandate of restoring Ms. Atchley to her prior position. *See Mason,* 115 F.3d at 1460 ("multiple punitive damage award on overlapping theories of recovery may not be duplicative at all, but may instead represent the jury's proper effort to punish and deter all the improper conduct underlying the verdict.").

In this case, the district court applied the *Mason* reasoning, stating:

> Title VII was enacted to curb racial and gender discrimination in the work place, and the corresponding damage awards are meant to compensate the victim and punish the violator for such discrimination.… By contrast, the objectives of the FMLA are inter alia to balance the demands of the workplace with the needs of families and to promote national interest in preserving family integrity and to entitle employees to take reasonable leave for medical reasons [such as] for the birth …

of a child.  The jury award in this case addresses two separate and distinct wrongs, notwithstanding the fact they are based on the same conduct.  Hence, the Court, in light of the separate statutory schemes and purposes thereof, finds that the jury's award of punitive and liquidated damages does not constitute double recovery.  Thus, both awards will stand.

(internal quotations and citations omitted).  Again, Nordam has not shown us the evidence is so in his favor that the district court was in error to deny its motion.

## VII.

Finally, Nordam argues DSS was Ms. Atchley's true employer; therefore, the court should not have granted DSS' motion for a directed verdict, finding as a matter of law, the totality of the circumstances dictated Nordam was Ms. Atchley's employer under Title VII.  Nordam admits it did not seek any affirmative relief against DSS other than damages claimed under the indemnification agreement between DSS and Nordam.  When the district court contemplated this issue at the motion stage, it found Nordam was Ms. Atchley's proper employer and Nordam could not properly challenge the dismissal of Ms. Atchley's claims against DSS.  *See Northwest Airlines, Inc. v. Transport Workers Union of America*, 451 U.S. 77, 101 S. Ct. 1571, 1580 (1981) (There is no statutory or common law right to contribution in Title VII cases; and even assuming a cognizable claim by the principal plaintiff against a third party defendant, there was insufficient basis for recognizing a right of contribution by the defendant employer against the third party defendant.).

Were we to view the merits, it is patent the district court carefully analyzed whether Nordam was Ms. Atchley's true employer. Acknowledging it must consider many factors and an employee can have more than one employer for Title VII purposes, "the *main focus* of the court's inquiry is the employer's right to control the means and manner of the worker's performance." ***Lambertsen v. Utah Dept. of Corrections***, 79 F.3d 1024, 1028 (10th Cir. 1996) (emphasis added). In the district court's view, the evidence showed Nordam controlled every aspect of Ms. Atchley's employment and granted her maternity leave: she was interviewed and hired by Nordam; Nordam determined her work schedule, and she requested maternity leave from her Nordam superior who granted the request and confirmed nothing else was necessary to ensure her leave; the same superior memorialized this understanding on Nordam letterhead and confirmed the anticipated start date of the maternity leave; the letter, and the leave itself, were approved by Nordam's Director of Engineering; and, finally, it was Nordam who informed Ms. Atchley she had been discharged upon her return from maternity leave.

Here, Nordam argues the district court should have left to the jury the question of whether DSS or Nordam, or both, were liable because the question was one of fact. DSS paid Ms. Atchley, and DSS testified at trial it was her employer. Therefore, Nordam argues, the jury might have concluded DSS was the employer or that both Nordam and DSS should share liability for the damages under a theory of joint employment. But once

again, this evidence does not persuade us the district court erred in considering the totality of the circumstances or then concluding Nordam was Ms. Atchley's employer.

DSS argues the only claim which Nordam may properly appeal is for indemnification. In its Third Party Complaint, Nordam relied on the contract wherein DSS promised to "indemnify [Nordam] harmless from and against any and all damages, expenses, liabilities and claims arising from sickness, injuries to or death, of any person or damage to, or loss of property caused by the negligence of [DSS] employees." Because the events involving Ms. Atchley did not include negligent acts of a DSS employee which resulted in sickness,[5] and, in fact, Nordam did not allege any negligence by a DSS employee, the indemnification agreement does not provide Nordam with a claim. *See Allied Hotels Co. v. H.& J. Constr. Co.*, 376 F.2d 1, 2 (10th Cir. 1967) ("Courts may not read into an indemnity contract that which does not actually appear in it or which is not warranted by a reasonable interpretation thereof."); *see also National Union Fire Insurance Company v. A.A.R. Western Skyways, Inc.*, 784 P.2d 52, 54 (Okla. 1989) (Under Oklahoma law, the general rule of indemnity is "one *without fault* who is forced to pay on behalf of another, is entitled to indemnification.") (emphasis added). Nordam was the party with fault, and the agreement did not state indemnification was due in this case.

---

[5] The loss arose from Nordam's violation of Title VII and FMLA.

The district court did not err in granting DSS' motion for a directed verdict. In any case, Nordam has no standing to challenge that decision here. Further, the district court did not err in ruling no contractual right to indemnity in favor of Nordam existed.

## VIII.

Nordam's objection to the award of attorneys' fees to Ms. Atchley is tied to its appeal of the merits of the case; that is, because she should have lost on the FMLA and Title VII claims, she should not have been awarded fees. Nordam asks for a reduction in attorneys' fees if any part of the judgment is reversed. Because we affirm all aspects of the judgment against Nordam, we need not disturb the award of attorneys' fees.

**AFFIRMED**.