Harry MARROW, Plaintiff,

v.

ALLSTATE SECURITY & INVESTIGATIVE SERVICES, INC.,
Defendant.

No. CIV.A.00–5398.

United States District Court,
E.D. Pennsylvania.

Oct. 4, 2001.

Gerald Jay Pomerantz, Mark S. Scheffer, Pomerantz & Scheffer, Philadelphia, PA, for plaintiff.

George A. Voegele, Jr., Klett, Lieber, Rooney & Schorling, P.C., Philadelphia, PA, for defendant.

## OPINION

POLLAK, District Judge.

Plaintiff Harry Marrow alleges that he informed the Department of Labor early last year of improprieties in wages and benefits provided to him by his employer, Allstate Security & Investigative Services. He contends that Allstate retaliated by firing him several months later. He has filed a complaint in this court asserting a number of causes of action, including violations of the Pennsylvania Whistleblower Law ("PAWBL"), 43 P.S. § 1421 et seq., the Employee Retirement and Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., and the antiretaliation provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215.

Allstate has moved to dismiss Marrow's complaint in part and to strike several portions of the complaint. First, Allstate contends that because it is not a "public body" within the meaning of the PAWBL, see 43 P.S. § 1422, it is not covered by the terms of that law. Second, Allstate contends that Marrow is not entitled to a jury trial or to punitive damages on his ERISA claim. Third and finally, Allstate contends that Marrow is not entitled to seek punitive damages for his FLSA claim. In response, Marrow concedes all but the last of Allstate's points. As a result, only one dispute remains before the court at this time: whether Marrow is entitled to seek

punitive damages for retaliation in violation of the FLSA. For the reasons stated below, I believe that he is.

## I

The anti-retaliation provision of the FLSA is codified within 29 U.S.C. § 215. The subsections of § 215 make it unlawful to violate provisions of the FLSA which, among other things, set minimum wage and maximum hour requirements and prohibit the use of oppressive child labor. This action involves § 215(a)(3), the "anti-retaliation" provision of the FLSA, which makes it unlawful

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about

to testify in any such proceeding, or has served or is about to serve on an industry committee....

As enacted in 1938, the FLSA provided a remedy for improper retaliation equal to "double the shortfall of wages." *See Travis v. Gary Community Mental Health Center, Inc.*, 921 F.2d 108, 111 (7th Cir. 1990). It did not provide for punitive damages. In 1977, however, Congress amended the Act to include § 216. Subsection (a) of § 216 [1] authorizes the imposition of criminal penalties, including fines and imprisonment, on any person who "willfully violates any of the provisions of section 215 of this title." 29 U.S.C. § 216(a). Subsection (b),[2] the one at issue in this case, has two basic provisions. Its first sentence establishes the civil liability, for unpaid wages and an equal amount of liquidated damages, of an employer who fails to pay

1. In its entirety, 29 U.S.C. § 216(a) states:

   Any person who willfully violates any of the provisions of section 215 of this title shall upon conviction thereof be subject to a fine of not more than $10,000, or to imprisonment for not more than six months, or both. No person shall be imprisoned under this subsection except for an offense committed after the conviction of such person for a prior offense under this subsection.

2. In its entirety, 29 U.S.C. § 216(b) states:

   Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages. An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action. The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action under section 217 of this title in which (1) restraint is sought of any further delay in the payment of unpaid minimum wages, or the amount of unpaid overtime compensation, as the case may be, owing to such employee under section 206 or section 207 of this title by an employer liable therefor under the provisions of this subsection or (2) legal or equitable relief is sought as a result of alleged violations of section 215(a)(3) of this title.

employees the minimum wages or the overtime pay mandated by the FLSA. The second sentence establishes the civil liability of an employer who discharges an employee in a manner proscribed by § 215(a)(3)—i.e., in retaliation for complaining of an employer's alleged violation of the FLSA:

> Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

The third sentence of § 216(b) authorizes "any one or more employees" to bring suit in federal or state court to recover the damages specified in either of the first two sentences. The remainder of § 216(b) further describes the specifics of such an action, and also provides that if the Secretary of Labor institutes an action on behalf of aggrieved employees under 29 U.S.C. § 217,[3] the private right of action brought by the employee or employees shall terminate.

3. In its entirety, 29 U.S.C. § 217 states:

> The district courts, together with the United States District Court for the District of the Canal Zone, the District Court of the Virgin Islands, and the District Court of Guam shall have jurisdiction, for cause shown, to restrain violations of section 215 of this title, including in the case of violations of section 215(a)(2) of this title the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this chapter (except sums which employees are barred from recovering, at the time of the commencement of the action to restrain the violations, by virtue of the provisions of section 255 of this title).

The Secretary may also institute an action under 29 U.S.C. § 216(c), which states:

> The Secretary is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages. The Secretary may bring an action in any court of competent jurisdiction to recover the amount of unpaid minimum wages or overtime compensation and an equal amount as liquidated damages. The right provided by subsection (b) of this section to bring an action by or on behalf of any employee to recover the liability specified in the first sentence of such subsection and of any employee to become a party plaintiff to any such action shall terminate upon the filing of a complaint by the Secretary in an action under this subsection in which a recovery is sought of unpaid minimum wages or unpaid overtime compensation under sections 206 and 207 of this title or liquidated or other damages provided by this subsection owing to such employee by an employer liable under the provisions of subsection (b) of this section, unless such action is dismissed without prejudice on motion of the Secretary. Any sums thus recovered by the Secretary of Labor on behalf of an employee pursuant to this subsection shall be held in a special deposit account and shall be paid, on order of the Secretary of Labor, directly to the employee or employees affected. Any such sums not paid to an employee because of inability to do so within a period of three years shall be covered into the Treasury of the United States as miscellaneous receipts. In determining when an action is commenced by the Secretary of Labor under this subsection for the purposes of the statutes of limitations provided in section 255(a) of this title, it shall be considered to be commenced in the case of any individual claimant on the date when the complaint is filed if he is specifically named as a party plaintiff in the complaint, or if his name did not so appear, on the subsequent date on which his name is added as a party plaintiff in such action.

The issue in this case boils down to whether the phrase "legal or equitable relief" in the second sentence of § 216(b) includes punitive damages within its meaning. "Remarkably, [this] question ... seems to have been little litigated." *Lanza v. Sugarland Run Homeowner's Ass'n, Inc.*, 97 F.Supp.2d 737, 739 (E.D.Va.2000). The only two circuit courts to reach the question—the Seventh and the Eleventh—have split. *See* Marjorie A. Shields, Annotation, *Availability of Punitive Damages in Action for Retaliatory Discharge Under § 16(b) of Fair Labor Standards Act,* 2001 A.L.R. Fed. 1 (2001); *The Fair Labor Standards Act* § 15.VII.B.6(b) at 943 (Ellen C. Kearns, ed.2000).

The leading case allowing punitive damage awards in cases brought under the second sentence of § 216(b) is *Travis v. Gary Community Mental Health Center,* 921 F.2d at 108. There, Judge Easterbrook stated briefly, in reference to § 216(b),

This amendment authorizes "legal" relief, a term commonly understood to include compensatory and punitive damages.

Because the original text prescribed as a remedy double the shortfall of wages, and the amendment says that damages include this "without limitation", Congress has authorized other measures of relief. Which other forms? The answer has been left to the courts. We could not find any case interpreting this amendment. The legislative history is unhelpful. The language originated in the Senate; the committee report does not discuss it. The Conference Committee adopted the Senate's proposal, remarking that the bill authorizes suits "for appropriate legal or equitable relief" without describing what relief might be "appropriate." H.R. Conf. Rep. No. 95–497, 95th Cong., 1st Sess. 16 (1977).

Appropriate legal relief includes damages. Congress could limit these damages, but the 1977 amendment does away with the old limitations without establishing new ones. Compensation for emotional distress, and punitive damages, are appropriate for intentional torts such as retaliatory discharge.

*Id.* at 111–12.

The position articulated by the Seventh Circuit in *Travis* in 1990 has been reaffirmed by that court. *See, e.g., Shea v. Galaxie Lumber & Const. Co., Ltd.,* 152 F.3d 729, 736 (7th Cir.1998); *Soto v. Adams Elevator Equip. Co.,* 941 F.2d 543, 551 (7th Cir.1991). In addition, district courts in other circuits have relied on *Travis* to reach the conclusion that § 216(b) authorizes punitive damages. *See, e.g., Travis v. Knappenberger,* 2000 WL 1853084 at *14 (D.Or.2000) ("Because the statute provides that the legal and equitable relief available is 'without limitation,' it may include compensatory and punitive damages."); *Contreras v. Corinthian Vigor Ins. Brokerage, Inc.,* 25 F.Supp.2d 1053, 1059–60 (N.D.Cal.1998) (relying on *Travis* and Ninth Circuit's "historically expansive view of remedies under federal labor laws"). In *dictum,* the Ninth Circuit has described *Travis* as "persuasive." *See Lambert v. Ackerley,* 180 F.3d 997, 1011 (9th Cir.1999) (en banc).

The only other circuit court that has reached the issue has disagreed with *Travis.* In *Snapp v. Unlimited Concepts, Inc.,* 208 F.3d 928 (11th Cir.2000), the Eleventh Circuit evaluated the meaning of "legal relief" by "look[ing] for clues within the statute." *Id.* at 934; *see also Lloyd v. Wyoming Valley Health Care System, Inc.,* 994 F.Supp. 288, 292 (M.D.Pa.1998) (adopting the reasoning of *Snapp* in a Family and Medical Leave Act case). The Eleventh Circuit first noted that "all of the relief provided in section 216(b) has [some-

thing] in common: it is meant to *compensate* the plaintiff." 208 F.3d at 934. Applying the principle of *eiusdem generis*, the court argued that punitive damages "have nothing to do with compensation," and "would be out of place in a statutory provision aimed at making the plaintiff whole." *Id.*

Next, *Snapp* examined subsection (a) of 29 U.S.C. § 216, which, as described earlier, provides criminal penalties for willful violations of § 215. After considering this subsection together with § 216(b), the Eleventh Circuit concluded that Congress had "enacted a comprehensive remedial scheme for violations of the FLSA's substantive provisions that covers the whole terrain of punitive sanctions, compensatory relief, private rights of actions, and actions brought by the Secretary of Labor." *Id.* at 935. In the view of the Eleventh Circuit, Congress had not simply "left to the courts" the issue of punitive damages under § 216(b), as Judge Easterbrook had suggested in *Travis.* 921 F.2d at 111. The Eleventh Circuit observed that, under the *Travis* approach, punitive damages should be awarded for virtually every violation of § 215(a)(3), because retaliatory discharge is "inherently willful." 208 F.3d at 936. But because Congress explicitly mentioned punitive sanctions for willful misconduct only in a criminal enforcement section, the Eleventh Circuit concluded that the legislature "meant the Executive to make a determination regarding which cases of intentional retaliation are so egregious that they warrant the imposition of an additional punitive deterrent." *Id.*

Finally, *Snapp* relied on judicial decisions interpreting section 7(b) of the Age Discrimination in Employment Act ("ADEA"). That section states, in relevant part,

> Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title: *Provided,* That liquidated damages shall be payable only in cases of willful violations of this chapter. In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section.

29 U.S.C. § 626(b). In *Dean v. American Security Ins. Co.,* 559 F.2d 1036 (5th Cir. 1977), the Fifth Circuit had held that, by providing liquidated damages without mentioning punitive damages, Congress had meant to preclude punitive damages under the ADEA. Given the similarity of the "legal or equitable relief" phrasing in the FLSA, *Snapp* concluded that *Dean* supported a narrow reading of 29 U.S.C. § 216(b).

## II

Despite the arguments presented by the Eleventh Circuit in *Snapp,* I, like the Seventh Circuit, conclude that punitive damages are available under the second sentence of § 216(b). I reach this conclusion for the reasons that follow.

Although the second sentence of § 216(b) does not speak directly to the issue, the simplest reading of its terms suggests that it contemplates the availability of punitive damages. The text provides that an employer who retaliates against a worker in violation of the FLSA "shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title." Punitive damages are undoubtedly a form of "legal ... relief." *See, e.g.,*

*Curtis v. Loether,* 415 U.S. 189, 197, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974) ("[T]he relief sought here—actual and punitive damages—is the traditional form of relief offered in the courts of law."). The question, then, is whether such damages "may be appropriate to effectuate the purposes of section 215(a)(3) of this title."

In *Mitchell v. Robert De Mario Jewelry, Inc.,* 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960), the Supreme Court explained the purposes of the Fair Labor Standards Act, and in particular, § 215(a)(3), as follows:

> The central aim of the Act was to achieve, in those industries within its scope, certain minimum labor standards.... For weighty practical and other reasons, Congress did not seek to secure compliance with prescribed standards through continuing detailed federal supervision or inspection of payrolls. Rather it chose to rely on information and complaints received from employees seeking to vindicate rights claimed to have been denied. Plainly, effective enforcement could thus only be expected if employees felt free to approach officials with their grievances. This end the prohibition of § [215(a)(3)] against discharges and other discriminatory practices was designed to serve. For it needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions. By the proscription of retaliatory acts set forth in § [215(a)(3)], and its enforcement in equity by the Secretary pursuant to

§ [217], Congress sought to foster a climate in which compliance with the substantive provisions of the Act would be enhanced.

*Id.* at 292, 80 S.Ct. 332 (citations omitted). According to *Mitchell,* § 215(a)(3) furthers the overall purposes of the FLSA by ensuring that employees feel secure in reporting violations of labor standards. Doing so is essentially a matter of deterring employers from retaliating against such employees. Deterrence, of course, is the special talent of punitive damages. *See Cooper Industries, Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424, 121 S.Ct. 1678, 1683, 149 L.Ed.2d 674 (2001) (purpose of punitive damages is to "punish the defendant and to deter future wrongdoing"). It therefore stands to reason that the second sentence of § 216(b) would "effectuate the purposes of section 215(a)(3)" by encompassing punitive damages.[4]

This result mirrors not only common sense but also common law. Most jurisdictions have created common-law protections for employees who are wrongfully discharged in retaliation for conduct they have taken that furthers public policy. With few exceptions, these cases have provided that tort damages are available in such cases, including punitive damages where the employer has acted in an egregious manner. *See* 1 Lex K. Larson, *Unjust Dismissal,* § 9A.03[2][b] at 9A–43, 9A–44 (2001); Daniel P. Westman, *Whistleblowing: The Law of Retaliatory Discharge* 116 (1991). This seems to reinforce what might otherwise be obvious: punitive

---

**4.** My understanding appears to mirror that of the Secretary of Labor, as presented to a district court in *Martin v. American Intern. Knitters Corp.,* 1992 WL 108832 (N.Mariana Islands 1992). In that case, the Secretary brought, on behalf of the defendant's employees, an action seeking back payment of minimum wages and overtime pay. The Secretary contended—successfully—that she should be

able to recover punitive damages under § 216(c) when she proved violations of § 215(a)(3), because even though § 216(c) does not specifically discuss punitive damages, such damages would have been available to the employees if they had proceeded as private plaintiffs under § 216(b). The text of § 216(c) is at footnote 3, *supra,* and the text of § 216(b) is at footnote 2, *supra.*

damages can deter undesirable conduct by employers. Moreover, it supports the position that, if § 216(b) is read to include punitive damages as a remedy for retaliatory discharge, the statutory provision would not be a legal anomaly.

As described above, the Eleventh Circuit has reached a conclusion with which I differ. Several of the arguments in *Snapp* seem to me misplaced. First of all, application of the maxim of *eiusdem generis* to § 216(b) is inappropriate because that subsection prefaces its list of various forms of relief with the phrase "including *without limitation.*" (Emphasis added). The most sensible reading of that phrase leads to the conclusion that by listing several potential forms of relief, Congress did not mean to exclude others. Moreover, as described by *Mitchell*, the purpose of § 215(a)(3) is not purely compensatory. These provisions are meant to safeguard the overall operation of the FLSA by providing employees with protection substantial enough to discourage employers from engaging in retaliation. As such, confining their purpose to "making the plaintiff whole" would fail fully to implement the intent of Congress.

I have concerns regarding *Snapp*'s second argument as well. As an initial matter, I disagree with its premise, which contends that, if punitive damages were available under the second sentence of § 216(b), they would have to be awarded in every case because retaliation is "inherently willful." 208 F.3d at 936.[5] A jury confronted with a § 216(b) suit for violation of § 215(a)(3) need not necessarily award punitive damages, nor impose such damages in a more than nominal amount. Moreover, it seems unpersuasive to say that, since punitive damages would have to

be awarded in every case, Congress cannot possibly have meant that they be awarded at all. As described earlier, common law actions for retaliatory discharge in violation of public policy have included punitive damages as a matter of course.

Moreover, with respect to the implications of § 216(a)—the subsection that makes willful violations of § 215 a crime— I agree with the position advanced by a concurring member of the *Snapp* court. While supporting the majority's result, Judge Carnes stated that, in his view, "[t]he provision of criminal penalties [in § 216(a) ] means Congress thought compliance with the statute sufficiently important that *willful violation of it should subject the culprit to the possibility of criminal prosecution and penalties upon conviction. That hardly forecloses punitive damages.*" 208 F.3d at 939–40. Judge Carnes went on to point out that the majority's argument rested on the proposition that

> Whenever Congress decides that a statute's provisions are sufficiently important to warrant reinforcing compensatory remedies with a criminal sanction, we should infer Congress intended that punitive damages not be available. I disagree with that proposition.

*Id.* at 940. So do I. The mere availability of fines for criminal violations of § 215(a)(3) does not foreclose the availability of punitive damages in private enforcement actions. Civil remedies can be broadly described by using phrases such as "equitable and legal relief," but criminal penalties are normally specified with more precision. It is therefore not dispositive that Congress specifically mentioned the availability of monetary fines in cases of

---

**5.** This statement is in some tension with the Supreme Court's observation in *Brooklyn Savings Bank v. O'Neil* that Congress made criminal penalties for FLSA violations "available only for willful violations" and that such violations are "difficult to prove." 324 U.S. 697, 709, 65 S.Ct. 895, 89 L.Ed. 1296 (1945).

criminal violations without doing so in cases of civil violations.

The final *Snapp* argument relies on an analogy to section 7(b) of the ADEA (codified at 29 U.S.C. § 626(b)). For reasons that I will explain, I find this analogy unpersuasive. *Snapp* relies on the holding of *Dean v. American Security Ins. Co.*, 559 F.2d at 1036, where the Fifth Circuit had held that by providing liquidated damages without mentioning punitive damages, Congress meant to preclude punitive damages under the ADEA. Given the similarity between the "legal and equitable relief" phrasing that appears in the ADEA and the FLSA, *Snapp* concluded that *Dean* supported a narrow reading of 29 U.S.C. § 216(b).

The circuits that have reached the issue of punitive damages under the ADEA agree with *Dean*'s construction. *See, e.g., Bruno v. Western Elec. Co.*, 829 F.2d 957 (10th Cir.1987); *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143 (2d Cir. 1984); *Kolb v. Goldring, Inc.*, 694 F.2d 869 (1st Cir.1982); *Pfeiffer v. Essex Wire Corp.*, 682 F.2d 684 (7th Cir.1982); *Walker v. Pettit Const. Co., Inc.*, 605 F.2d 128 (4th Cir.1979). The Third Circuit has held that pain and suffering damages are unavailable under the ADEA, *see Rogers v. Exxon Res. & Eng. Co.*, 550 F.2d 834, 839 (3d Cir.1977), *overruled on other grounds, Smith v. Jos. Schlitz Brewing Co.*, 604 F.2d 220 (3d Cir.1979), but it has not reached the question of whether punitive damages are available. But even assuming that the Third Circuit would concur in the *Dean* analysis of 29 U.S.C. § 626, I am not persuaded that the syntactical similarity of the relevant provisions of the ADEA and FLSA means that they have identical effect. The Fifth Circuit's reading of the ADEA in *Dean* was heavily influenced by

several features of that Act that are absent from the FLSA. For example, the ADEA provision that is now codified at 29 U.S.C. § 626(b) originally included a criminal enforcement provision that was removed prior to passage of the Act.[6] *See* 113 Cong. Rec. § 31254 (Sept. 6, 1967) (Statement of Sen. Javits) (describing amendments to what was then S.830, including "the elimination of the criminal penalty in favor of a provision for double damage in cases of willful violations"). Based on this change, the *Dean* court concluded that "Congress preferred liquidated damages in lieu of punitive damages." 559 F.2d at 1039. That conclusion cannot be applied to the FLSA; *Snapp* not only recognizes the continuing existence of criminal penalties for FLSA violations, but actually relies on those penalties in arguing that further punitive sanctions cannot have been contemplated by the FLSA's drafters.

Restricting the availability of punitive damages under the ADEA makes sense in light of the fact that § 626(b) limits the availability of liquidated damages to cases involving "willful violations" of the Act. That limitation makes it plausible to infer, as the *Dean* court did, that liquidated damages are to be the *sole* remedy for willful violations. *See also Pfeiffer*, 682 F.2d at 686 (noting that "willful" language was "intended to limit the scope of remedies under the ADEA"); *Walker*, 605 F.2d at 130 (drawing same inference as *Dean*). But the FLSA grants liquidated damages for retaliation without a showing of willfulness, making it harder to conclude that it does not authorize other damages upon such a showing. The Third Circuit's opinion in *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1102 (3d Cir.1995), points this out in arguing that similarities

---

**6.** 29 U.S.C. § 626 still provides for criminal penalties, but they are directed against those who interfere with the duties of an officer of the Equal Employment Opportunity Commission.

in syntax between certain provisions of the FLSA and the ADEA do not compel the conclusion that those provisions must accomplish the same things. *See* 54 F.3d at 1103 n. 16 ("The difficulty with [arguing that the ADEA incorporates the damages provisions of the FLSA] is compounded by the ADEA requirement of willfulness, which is not found in the FLSA."); *id.* at 1102 ("[W]e reject the reasoning of those courts that believe Congress intended to incorporate into the ADEA all of the damage provisions of the [FLSA].").[7]

### III

For the foregoing reasons, I conclude that the second sentence of § 216(b) allows a FLSA plaintiff to obtain punitive damages against an employer who violates the provisions of § 215(a)(3). Accordingly, in an order accompanying this opinion, the defendant's motion to strike plaintiff's claim for such damages will be denied.

---

**7.** Other arguments used to deny punitive damages under the ADEA seem similarly inapplicable to the FLSA. For example, several courts have noted that precluding punitive damages facilitates the administrative reconciliation process provided for by the ADEA (but not provided for by the FLSA). *See Bruno,* 829 F.2d at 967; *see also Johnson,* 731 F.2d at 147–48; *Pfeiffer,* 682 F.2d at 686; *see generally Rogers,* 550 F.2d at 839–40 (denying ADEA damages for pain and suffering on this rationale). These courts reasoned that allowing punitive damages in court proceedings might discourage ADEA plaintiffs from fully cooperating with administrative proceedings, since punitive damages are unavailable in the administrative process. *See id.* Other courts have relied on the report of a congressional subcommittee stating in no uncertain terms that "[t]he ADEA ... does not provide remedies of a punitive nature." H.R.Rep. No. 950, 95th Cong., 2d Sess. at 14, U.S.Code Cong. & Admin.News 1978, p. 528 (cited by *Johnson,* 731 F.2d at 147; *Kolb,* 694 F.2d at 872; and *Pfeiffer,* 682 F.2d at 687). Similar statements are absent from the history of the FLSA.