**Wanda JOHNSTON, Plaintiff,**

v.

**DAVIS SECURITY, INC.,
et al., Defendants.**

**No. 2:01CV825K.**

United States District Court,
D. Utah,
Central Division.

Sept. 9, 2002.

---

48. 64 Fed.Reg. 45388, 45390 (8/19/99).

Joann Shields, Packard, Packard & Johnson, Salt Lake City, UT, for plaintiff.

W. Mark Gavre, Parsons, Behle & Latimer, Salt Lake City, UT, Mary Anne Q. Wood, Larry S. Jenkins, Wood, Crapo, LLC, Salt Lake City, UT, for defendants.

## MEMORANDUM DECISION AND ORDER

KIMBALL, District Judge.

This matter is before the court on Defendants Davis Security, Inc., John Davis, and Michael Pitts's Motion for Partial Summary Judgment or to Dismiss Counts III Through XIII and XVI. The court held a hearing on this motion on August 20, 2002. At the hearing, Plaintiff was represented by JoAnn Shields, and Defendants were represented by Mary Anne Q. Wood. Having fully considered the motions, memoranda, affidavits, and exhibits submitted by the parties and the facts and law relevant to this motion, the court enters the following Order.

## BACKGROUND

For purposes of this motion, Defendants have admitted that the allegations in Plaintiff's Complaint are true.

Plaintiff Wanda Johnston worked for Davis Security from March 2000 through February 2001, as a security guard at the Foothill Village shopping center. Johnston was hired to work for $8.00 per hour and her overtime and holiday pay was calculated at one and one-half times her regular rate. In September 2000, Plaintiff's regular rate of pay was increased to $8.50 per hour. However, at this time, Davis Security began to alter Plaintiff's regular rate depending on the number of hours she worked overtime so that her total compensation equaled $8.50 per hour. Plaintiff spoke to Defendants several times about the change in her method of pay and Defendants always assured her that it was correct.

When Davis Security lost its contract to provide security at Foothill Village, Plaintiff gave her two-week notice that she was quitting and going to work for IPC, the new security company contracting with Foothill Village. Johnston claims that Davis Security retaliated against her by calling and telling her new employer that she was suing Davis Security, that she was suing her new employer, that she was improperly collecting workers compensation benefits, and that Davis security was going to call the corporate headquarters and property manager of her new employer to tell them that she was suing Davis Security for back wages.

Plaintiff claims that Davis Security's call to IPC negatively affected her new employer's view of her and her continued employment, her new supervisor did not appear to believe her side of the story, and she has not worked in the security industry for several months. Plaintiff also claims that Defendants' actions caused her to experience so much anxiety that she could not sleep, had trouble eating, started experiencing panic attacks, suffered depression, and required her to take tranquilizers to help her cope with her trauma.

Plaintiff has brought claims against Defendants under the Fair Labor Standards Act ("FLSA") for unpaid wages and overtime, plus liquidated damages, attorney fees and costs and for retaliation. Based on the same facts, Plaintiff has also brought ten additional state common law claims for civil conspiracy, conversion, unjust enrichment, fraud by material omission, fraud by affirmative misrepresentation, negligent misrepresentation, gross negligence, breach of contract, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, and intentional infliction of emotional distress.

## DISCUSSION

### *Defendants' Motion for Partial Summary Judgment or to Dismiss*

Defendants have filed a motion for partial summary judgment or to dismiss claiming that Plaintiff's state common law claims are preempted by the FLSA because they are based on the same set of facts as her FLSA claims. Defendants also claim that Plaintiff has failed to state a claim for retaliation under the FLSA because she has not alleged any adverse action or damages as a result of the alleged retaliatory conduct. In addition, Defendants seek dismissal of Plaintiff's request for punitive damages as a result of the alleged retaliatory conduct. Furthermore, Defendants seek to have Plaintiff's intentional infliction of emotional distress claim dismissed on the grounds that the conduct alleged is not sufficiently outrageous to meet the standards necessary to make such a claim under Utah law.

## A. Preemption of State Common Law Claims

Defendants argue that because Plaintiff's Counts III through XII and part of Count XVI are based on the same facts and seek damages for the same overtime violations she alleges under her FLSA claims, the state law claims are preempted. Defendants contend that Plaintiff has asserted these state common law claims to get additional types of damages not provided as remedies under the FLSA, such as consequential and punitive damages.

■ As an initial matter, Plaintiff argues that Defendants waived any preemption affirmative defense by not raising it in their Answer. However, the Tenth Circuit has recognized that an affirmative defense can be raised by a motion for summary judgment. *Smith v. Spain*, 1998 WL 4358, *1 (10th Cir. Jan.8, 1998) (affirmative defense of qualified immunity may be raised by a motion for summary judgment). In this case, there is no prejudice to Plaintiff in allowing the defense to be raised by motion. The initial pretrial conference was held in June and the case is in the early stages of discovery. Plaintiff was also given adequate time to respond to this motion.

■ As to the merits of the preemption issue, Plaintiff argues that the Defendants actively made misrepresentations that fraudulently induced Plaintiff not to vindicate her FLSA rights to overtime. Therefore, she contends that her state common law claims are not stating the same claims as her FLSA overtime claim.

The FLSA creates statutory rights for employees to earn a minimum pay for their work in excess of a forty-hour work week and sets forth remedies for violations. 29 U.S.C. §§ 206, 207, 216(b). In *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1399 (10th Cir.1997), the Tenth Circuit dismissed a retaliatory discharge claim brought under Kansas common law

because the plaintiff was also asserting a retaliatory claim under the FLSA. The court stated that "plaintiffs seeking to assert a common law cause of action for retaliation when they have a federal statutory right" are precluded from bringing the common law claim because of the "alternative statutory remedy available under the FLSA." *See id.*

Plaintiff relies on cases holding that state overtime wage law is not preempted by the FLSA because the FLSA's savings clause "allows states and municipalities to enact stricter wage and hour laws." *Williamson v. General Dynamics Corp.*, 208 F.3d 1144, 1148 (9th Cir.2000). In Williamson, the court allowed a common law fraud claim to proceed that was based on an employer's representations that the employees had career jobs. *Id.* at 1152. Based upon the employer's representations that they had career jobs, the plaintiffs did not participate in a class action FLSA case. The court found that there was no preemption because the plaintiffs were never subject to the FLSA's anti-retaliation provision and their claims did not "merely duplicate possible federal retaliation claims." *Id.* The plaintiffs in *Williamson* did not pursue their appeal of wage fraud claims that asserted the employer pledged to be honest and law abiding with regard to paying overtime but stopped paying overtime. *Id.* at 1148.

In this case, Plaintiff's common law claims are based on the same facts and circumstances as her FLSA claims. Plaintiffs claims are almost identical to the wage fraud claims in *Williamson* that the plaintiffs chose not to pursue on appeal. Plaintiff's allegation that Defendants claimed to be calculating overtime properly, when in fact they were not, is the basis for the FLSA claims. Plaintiff has not made any allegations that there was intentional fraud on the part of Defendants,

only that they claimed to be following the law. The factual circumstances present in this case do not give rise to actions separate from Plaintiff's FLSA claims.

The court concludes that, even based on the reasoning of *Williamson*, Plaintiff's common law claims would be barred as merely duplicative of her FLSA claims. Defendant has not brought any state statutory claims, only common law claims. The cases cited by Plaintiff where the plaintiffs were allowed to pursue state law claims in tandem with FLSA claims involved state wage law claims rather than common law claims and are, therefore, inapplicable to the present case. Similarly, cases relied on by Plaintiff that involve plaintiffs who were not covered by FLSA's overtime protection are inapplicable. Accordingly, Defendants' motion to dismiss Plaintiff's state common law claims is granted.

## B. Retaliation Claim

Defendants argue that Plaintiff has failed to allege a prima facie case of retaliation under the FLSA because she has not alleged that as a result of Davis Security's alleged actions she suffered an adverse employment impact or any resulting damages. Therefore, they assert that even assuming all of Plaintiff's allegations regarding Defendants' telephone call to her new employer are true, Plaintiff's retaliation claim should be dismissed as a matter of law.

### 1. Prima Facie Case

To establish a prima facie case of retaliation under the FLSA, Plaintiff must show that

(1) he or she engaged in activity protected by the FLSA; (2) he or she suffered adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection existed between the employee's activity and the employer's adverse action.

*Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir.1997). In the context of posttermination retaliation against a former employer, the Tenth Circuit has recognized that "former employees, no less than present employees, need[ ] protection from discrimination by employers resentful of the fact that a complaint ha[s] been made against them for alleged violations of the Fair Labor Standards Act." *Rutherford v. American Bank of Commerce*, 565 F.2d 1162, 1165 (10th Cir.1977) (applying reasoning of FLSA cases to Title VII discrimination case). In *Rutherford*, the Tenth Circuit relied heavily on the reasoning of FLSA cases of retaliation in the post-employment context. *See id.* (relying on *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 143 (6th Cir.1977), in which the court found retaliation against a former employer who disclosed to a prospective employer that the former employee had filed a FLSA claim).

Defendants assert that the issue here is not only what they did, but whether those actions caused any adverse impact to Plaintiff for which she could be compensated. Plaintiff argues that in the post-termination retaliation scenario, retaliation may be found without any adverse job action in the traditional employer-employer sense. Rather, Plaintiff argues that she need only show an adverse action taken by Defendants not an adverse action taken by her new employer.

In *Berry v. Stevinson Chevrolet*, 74 F.3d 980 (10th Cir.1996), a post-termination retaliation case of race discrimination case that relied on *Rutherford*, the court affirmed the trial court's finding of a prima facie case of retaliation which found that "(1) [the employee] filed an EEOC complaint; (2) [the former employers] caused individuals to report a purported forgery; and (3) that such adverse action would not

have occurred if [the employee] had not filed his EEOC complaint." *Id.* at 986.

In assessing whether the filing of criminal charges against a former employee constituted adverse employment action, the Tenth Circuit reasoned that "[i]t would be illogical to define a[n] ... employee liberally to include former employees and to simultaneously define an adverse employment action narrowly by limiting it to those formal practices linked to an existing employee/employer relationship." *Id.* The court rejected the former employer's arguments that, unlike a tainted employment reference, retaliatory prosecution is not connected with present or future employment. *See id.* The court reasoned that although a "tainted employment reference may have a more direct effect on a former employee's future employment prospects," "a criminal trial ... carries a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects." *Id.*

In this case, Plaintiff claims that Defendants' telephone calls themselves are the adverse action necessary to state a prima facie case in the post-termination context and the burden must now shift to defendants to give a legitimate non-retaliatory reason for their own adverse action. Defendants argue that this case is not analogous to a tainted employment reference case because in those types of case the calls from prospective employers resulted in the plaintiffs not being hired. However, in this case, Plaintiff's allegations that her new employer did not appear to believe her side of the story, that the telephone calls negatively affected her new employer's view of her, and that she has not worked as a security guard for months are too conclusory to amount to an adverse employment impact.

The issue, therefore, before the court is whether this case is analogous to a tainted employment reference that affects an em-

ployees future employment. Defendants' call to Plaintiff's new employer, two weeks after Plaintiff initiated her FLSA action, was obviously made in response to Plaintiff's FLSA action and in an effort to affect her future employment with her new employer. As in *Berry*, it carried a "significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects." *See id.* Therefore, the court concludes that under the Tenth Circuit's liberal definition of adverse employment action, Plaintiffs allegations that her new employer did not believe her side of the story, that the calls caused her new employer to view her negatively, and the calls caused her significant anxiety about her future employment and safety are sufficient to state a prima facie case of retaliation under the FLSA.

**2. Damages**

■ Defendants also assert that even if Plaintiff has stated a claim for retaliation, she can plead no damages resulting from the alleged retaliation and punitive damages are unavailable under § 216(b) of the FLSA. Remedies for retaliation under the FLSA include "such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Plaintiff argues that a plaintiff can receive compensatory damages, including emotional distress damages, and punitive damages under the FLSA's anti-retaliation statutes. Therefore, the issue for the court to decide is what types of damages are contemplated by § 216(b)'s use of the term "legal or equitable relief."

The type of damages available under § 216(b) for violation of the FLSA's anti-retaliation provisions has not been decided

by the Tenth Circuit. However, the availability of punitive damages in this context has caused a split among circuits and district courts across the country. The only two circuits to address the issue specifically—the Eleventh and Sixth Circuits—are split. *Compare Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928 (11th Cir.2000) (holding that punitive damages are not available under § 216(b)) *with Travis v. Gary Community Mental Health Center, Inc*, 921 F.2d 108, 111 (7th Cir.1991) (holding that punitive damages are available under § 216(b)).

Plaintiff claims that the Seventh Circuit's position is the majority position and that the Ninth Circuit has adopted that position as well. Although Ninth Circuit cases have referred to the Seventh Circuit's finding and allowed a punitive damages award to stand because the employer did not contest the availability of punitive damages below, the court has never specifically addressed and analyzed the issue and both decision were issued before the split arose between the Seventh and Eleventh Circuit. *See Lambert v. Ackerley*, 180 F.3d 997 (9th Cir.1999); *Williamson v. General Dynamics Corp.*, 208 F.3d 1144 (9th Cir.2000). In addition, at least one district court case following the Seventh Circuit's holding was decided before the Eleventh Circuit's decision in *Snapp* and followed it merely because there was no other authority at the time. *See O'Brien v. Dekalb–Clinton Counties Ambulance Dist.*, 1996 WL 565817, at *6 (W.D.Mo. 1996) ("In the absence of conflicting interpretation of the amended § 16(b) by another circuit, the court is persuaded to follow the Seventh Circuit's reasoning and hold that compensatory and punitive damages are available for violation of the FLSA's anti-retaliation provision."). Since the Eleventh Circuit's decision in *Snapp*, district courts deciding the issue are split. *Compare Marrow v. Allstate Security & Investigative Servs., Inc.*, 167 F.Supp.2d

838, 843 (E.D.Pa.2001) *with Lanza v. Sugarland Run Homeowners Association, Inc.*, 97 F.Supp.2d 737 (E.D.Va.2000). Given the lack of cases on this issue and the current split between courts, stating that one position is a majority appears to be an overstatement.

In *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928 (11th Cir.2000), the Eleventh Circuit held that punitive damages are not available under § 216(b) for a retaliation claim. To divine Congress' intent on this issue, the court did an exhaustive analysis of the statutory language. *Id.* at 933–38. The court reasoned that although the use of the term "legal relief" is certainly broad, the enumerated forms of relief in § 216(b) were all compensatory in nature. Given its conclusion that § 216(b)'s purpose was evidently to compensate the plaintiff, the court found that allowing punitive damages would be inconsistent with the section's purpose because they are intended to punish and deter willful and intentional violations. *Id.* at 934. The court explained that punitive damages are granted in exceptional cases of willful conduct, however, in the case of retaliation, they would need to be awarded in every case because retaliation is inherently intentional. *Id.* However, looking at the FLSA's remedial scheme, which provides for the government to intervene in exceptional cases and obtain punitive remedies, the court found that Congress did not intend punitive sanctions in all retaliation cases. *Id.*

Furthermore, the court reasoned that the "legal relief" language in the Age Discrimination in Employment Act ("ADEA") is exactly the same as that found in FLSA and should be similarly interpreted to preclude an award of punitive damages. *Id.* at 938. The Tenth Circuit has ruled that punitive damages are not available under Section 626(b) of the ADEA. *Bruno v. Western Electric Co.*, 829 F.2d 957, 966

(10th Cir.1987). The United States Supreme Court has also explained in *Lorillard v. Pons*, 434 U.S. 575, 579–80, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) that Section 626(b) of the ADEA was incorporated from Section 216(b) of the FLSA and should be interpreted the same.

Plaintiff argues that this court should adopt the reasoning of the Seventh Circuit, which allows punitive damages. *See Travis v. Gary Community Mental Health Center, Inc,* 921 F.2d 108, 111 (7th Cir. 1991). However, as discussed in *Snapp,* the Seventh Circuit's reasoning in *Snapp* merely states that because there is no legislative history on the issue it was left to the courts to decide and legal relief is commonly understood to include compensatory and punitive damages. *Id.*

However, other district courts, allowing punitive damages in this context, have provided additional reasoning. In *Marrow v. Allstate Security & Investigative Servs., Inc.,* 167 F.Supp.2d 838, 843 (E.D.Pa.2001), the district court found that punitive damages should be awarded because they effectuate the purposes of the anti-retaliation provisions of the FLSA by deterring employers from retaliating against employees. The court further reasoned that this result mirrors common law protections for employees who are wrongfully discharged in retaliation for conduct they have taken in furtherance of public policy. *Id.* at 843–44.

This court's view of the statutory language is in accord with *Lanza v. Sugarland Run Homeowners Association, Inc.,* 97 F.Supp.2d 737 (E.D.Va.2000), which denied punitive damages under § 216(b). For much the same reasons given in *Snapp,* the court concluded that § 216(b) was designed to compensate the aggrieved employee, punitive damages would be inimical to that purpose, punitive remedies are allowed in other provisions of the statute for willful violations, and the term

"legal relief" should be construed as it is under the ADEA. *Id.* at 739–41.

The reasoning of these courts coupled with the Tenth Circuit's reasons for denying punitive damages under the ADEA, leads this court to conclude that punitive damages should not be available under § 216(b). Section 216(b) does not specifically allow for punitive damages. However, Congress has demonstrated in other statutes that it knows how to provide for punitive damages. The Tenth Circuit provided this as one reason for not allowing punitive damages under similar language in the ADEA. *See Bruno,* 829 F.2d at 967.

Furthermore, Section 216(b) is compensatory in nature and allows for an additional liquidated damages provision to compensate the employee for damages "too obscure and difficult of proof of estimate." *See Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707, 65 S.Ct. 895, 89 L.Ed. 1296 (1945). In contrast to § 216(b), § 216(a) is designed to punish and deter employers who wilfully violate the antiretaliation provisions of the FLSA. *See* 29 U.S.C. § 216(a). This court agrees with *Snapp* that "there is simply no reason to carry the punitive element over from section 216(a) to section 216(b), a provision intended to compensate, not punish." *Snapp,* 208 F.3d at 935. As discussed in *Lanza,* "where the ADEA has liquidated damages for willful violations, the FLSA has criminal penalties." Because of the similarity of the language and remedial schemes of the two statutes, the court sees no reason for allowing punitive damages under the FLSA when they are not allowed under the ADEA.

Plaintiff argues that the *Bruno* court's determination that punitive damages were not available under the ADEA was based on a desire to facilitate resolution of cases at the agency level and that such reasoning makes *Bruno* inapplicable to the FLSA

because there are no agency level requirements under the FLSA. Although the statutes differ in this respect, resolution of cases at the agency level was not the only basis the *Bruno* court relied upon in concluding that punitive damages were not allowed. *See Bruno*, 829 F.2d at 967. *Bruno* is not dispositive of whether punitive damages are available under the FLSA. However, because of the similarities between the statutes, this court finds the factors relied upon by the *Bruno* court instructive on this issue.

Although some courts have found it persuasive that punitive damages are available under common law anti-retaliation causes of action, this reasoning does not square with the uniform rejection of punitive damages under the ADEA and the commands to this court to carry out congressional intent. Therefore, the inquiry must be whether congress intended to allow punitive damages, not whether the damages are consistent with common law causes of action.

■ For these reasons, the court holds that punitive damages are not allowed under Section 216(b) of the FLSA. Therefore, Plaintiffs remedies for alleged violations of the anti-retaliation provisions are limited to compensatory relief. "[T]he kinds of relief that a district court may need to award the plaintiff fully will vary with the facts of each case." *Snapp*, 208 F.3d at 937. While Defendants claim that Plaintiff can show no damages as a result of their retaliatory conduct, Plaintiff has provided affidavits demonstrating at least a factual dispute concerning emotional distress damages. The court finds that emotional distress damages could be available in this case as compensatory damages. Consequently, Defendants' argument that plaintiff can show no damages for the retaliatory conduct is without merit.

## C. Emotional Distress Claim

■ Defendants argue that the same facts underlying the retaliation claims, which also constitute the basis for Plaintiff's intentional infliction of emotional distress claim, are not sufficient to state a claim as a matter of law. "Whether the distress is severe enough and the alleged conduct is outrageous enough to support an action for the intentional infliction of emotional distress are initially legal questions for the court to resolve." *Metcalf v. Metro. Life Inc.*, 961 F.Supp. 1536, 1545 (D.Utah 1997).

■ Conduct that rises to the level of "outrageous and intolerable" is conduct that is "so extreme as to exceed all bounds of that usually tolerated in a civilized society." *White v. Blackburn*, 787 P.2d 1315, 1317 (Utah Ct.App.1990).

The alleged conduct—calling Plaintiff's new employer and stating that Plaintiff was suing Defendants, that she was suing her new employer, that she was improperly collecting workers' compensation benefits when she was not, and that Defendants were going to call her new employer's corporate headquarters and tell them that she was suing Defendants for back wages—does not rise to the level of outrageous conduct actionable under Utah state law. This conduct was not so outrageous that "a reasonable person normally constituted[ ] would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 975 (Utah 1993).

To the extent that Plaintiff has brought a common law claim for intentional infliction of emotional distress under Utah state law, the claim is dismissed as a matter of law. However, Plaintiff's claim for emotional distress damages for retaliation arising under the FLSA's antiretaliation provision, rather than Utah law, is governed by

different standards and need not reach the same level of outrageousness to be compensable. Under the FLSA, Plaintiff is entitled to recover compensatory damages for the full consequences of retaliation.

## CONCLUSION

Based on the above reasoning, Defendants Davis Security, Inc., John Davis, and Michael Pitts's Motion for Partial Summary Judgment or to Dismiss Counts III Through XIII and XVI is GRANTED IN PART AND DENIED IN PART.