Heather BLAGG, Plaintiff,

v.

THE TECHNOLOGY GROUP, INC., Millennium Technologies Consulting, Inc., Ed Bahl, and Mark Cunningham, Defendants.

No. CIV.A. 02–WM–273(CBS).

United States District Court, D. Colorado.

Jan. 21, 2004.

Erin Webber, Lawrence W. Marquess, Littler Mendelson, Denver, CO, for defendants.

Darold W. Killmer, Mari Newman, Killmer & Lane, Denver, CO, J. Mark Baird, J. Mark Baird, Law Office, LLC, Denver, CO, Shannon Way Roberts, Denver, Co., for plaintiff.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

MILLER, District Judge.

This matter is before me on defendants' motion for summary judgment. I have considered the parties' written arguments and the evidence submitted with their briefs and find that oral argument is not required. For the reasons that follow, I conclude that I lack jurisdiction over the claims presented. Accordingly, the motion will be granted and this case will be dismissed for lack of jurisdiction.

### Background[1]

Plaintiff Heather Blagg alleges that defendants The Technology Group, Inc. (TTG) and Millennium Technologies Consulting, Inc. (MiT) violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–1–2000e–17, and Colorado law by constructively discharging her in April 2001. The individual defendants, Ed Bahl and Mark Cunningham, were officers or managers of TTG and MiT, respectively, at all relevant times.

TTG and MiT are in the business of providing resource management and high-tech consulting services to the public sector. Both companies employ technical recruiters, such as Blagg, to identify job candidates from various database sources, determine a candidate's qualifications, draft resumes for him or her, and present the resume and candidate to an account executive employed by TTG and MiT. The account executives were then responsible for working with TTG's and MiT's clients

to determine the client's employment needs and to match those needs with candidates provided by the technical recruiters. Once matched with a client company, a candidate is referred to as a "consultant." As discussed below, the parties dispute whether the consultants were independent contractors or employees of defendants or their clients.

Blagg began working for defendants as a technical recruiter in July 2000. She asserts that she applied for and accepted employment with defendants because they permitted her to work full-time from her home. The parties dispute whether this benefit was made a condition of her employment. In September 2000, Blagg advised Bahl and Cunningham that she was pregnant. In late 2000 or early 2001, Bahl and Cunningham announced to staff that TTG and MiT would acquire office space. Blagg confirmed with them that she would be permitted to continue working from her home.

Blagg began a two-month maternity leave on February 2, 2001. On March 13, 2001, Blagg e-mailed Bahl to inform him that she was moving to Windsor, Colorado, to be closer to family. She asserts that, in his response, Bahl told her for the first time that she would be required to work full-time from the office upon her return from maternity leave. On April 2, 2001, Blagg submitted a resignation letter in which she attributed her leaving to the new requirement that she work from the office.

Blagg asserts the following claims for relief: (1) discrimination based on gender and pregnancy in violation of the Pregnancy Discrimination Act and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–1–2000e–17; (2) breach of con-

1. The following facts are drawn from the parties' stipulations in the Final Pretrial Order and from their factual statements and evidence presented in their summary judgment filings. Unless otherwise noted, the facts appear to be undisputed.

tract; (3) promissory estoppel; (4) intentional interference with contract; (5) negligent misrepresentation; and (6) gender discrimination in violation of the Colorado Anti–Discrimination Act, C.R.S. §§ 24–34–401–406.

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."' *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir.2001) (quoting *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir.1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id.*

## Discussion

1. *Lack of Jurisdictional Basis for Title VII Claim*

■ TTG and MiT contend they are not subject to Blagg's Title VII claims because they employed fewer than the fifteen persons required for Title VII jurisdiction. 42 U.S.C. § 2000e(b) defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year[.]" The resolution of this issue turns on whether the consultants hired by TTG and MiT to work for third-party companies are independent contractors or employees, and, if they are employees, whether they work for defendants or for the companies that are defendants' clients. For purposes of this issue only, defendants combine the employees of TTG and MiT and count Bahl and Cunningham as employees. It is undisputed that, even with this combination, defendants employed fewer than fifteen employees during the relevant time periods unless the consultants may be counted as their employees.

Defendants rely chiefly on the argument that the consultants were independent contractors, not employees, on the basis of the so-called "hybrid test" originating in *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322–24, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), and applied by the Tenth Circuit.

Under the hybrid test, the main focus of the court's inquiry is the employer's right to control the "means and manner" of the worker's performance. However, the hybrid test also looks at other factors, including: (1) the kind of occupation at issue, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the employer or the employee furnishes the equipment used and the place of work; (4) the length of time the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the employer; (9) whether the worker accumulates retirement benefits; (10) whether the employer pays social security taxes; and (11) the intention of the parties. No single fac-

tor is conclusive. Rather, the courts are to look at the totality of the circumstances surrounding the working relationship between the parties.

*Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 980 (10th Cir.2002) (internal quotation omitted).

Defendants analyze these factors to urge that the consultants were independent contractors, emphasizing the right to control as the "touchstone" factor. *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 123 S.Ct. 1673, 1680, 155 L.Ed.2d 615 (2003). Blagg disputes such a conclusion, arguing that many of the same factors establish an employer-employee relationship.

Viewing the evidence in the light most favorable to Blagg, a reasonable jury applying the factors of the hybrid test could conclude the consultants were employees, particularly given the control over the "means and manner" of the consultants' work by defendants' clients. Summary judgment on that issue would therefore not be appropriate. That does not resolve the case, however. Even assuming the consultants are employees, the jurisdictional issue remains whether defendants or the client companies (or both jointly) were their employers.

■ Despite their focus on the independent contractor issue, defendants also argue that the client companies, rather than defendants, held the right to control the essential elements of the consultants' work. As recently recognized by the Supreme Court, the common-law element of control, *e.g.*, a principal's control or right to control a servant's physical conduct in the performance of services, is the "principal guidepost" governing employer-em-

ployee status. *Clackamas*, 538 U.S. 440, 123 S.Ct. at 1679.

■ The Tenth Circuit has concluded that the hybrid test does not apply in a situation where more than one entity may be considered a Title VII plaintiff's employer. *Bristol v. Bd. of County Comm'rs*, 312 F.3d 1213, 1218 (10th Cir.2002) (*en banc*). Instead, the court applies either the joint-employer test or the single-employer test. *Id.* The joint-employer test acknowledges that the entities at issue (here defendants and the client company(ies)) are separate "but looks to whether they co-determine the essential terms and conditions of employment." *Id.* The single-employer test is similar, but "asks whether two nominally separate entities should in fact be treated as an integrated enterprise." *Id.* Because there is no dispute here that the defendant companies and their clients are separate entities, I will apply the joint-employer test.[2]

■ The key question under this test is whether the entities "share or co-determine those matters governing the essential terms and conditions of employment." *Id.* (quotation omitted). Again, control is the central issue. *Id.* ("In other words, courts look to whether both entitles 'exercise significant control over the same employees'") (quotation omitted). As discussed in *Bristol*, the determining factor is the right to make termination decisions: "Most important to control over the terms and conditions of an employment relationship is the right to terminate it under certain circumstances." *Id.* at 1219.

Upon my review of the parties' factual statements and evidence, I conclude no reasonable jury could find that defendants

---

**2.** The single-employer test consists of four factors: (1) interrelations of operation, (2) common management, (3) central control of labor relations, and (4) common ownership and fi-

nancial control. *Bristol,* 312 F.3d at 1220 (quotation omitted). There is no argument that defendants share common management or ownership with their client companies.

controlled the essential terms and conditions of the consultants' employment. Although Blagg attempts to present evidence that, at least on one occasion, an account executive (employed by defendants) made the decision to fire a consultant, even that witness conceded that decisions to terminate a consultant's employment were instigated by requests by the client companies. Exhibit I, Deposition of Tami Young, at 87. Further, the client companies appear to have made decisions to "hire" the consultants for various projects, and, once the consultant was placed with a client company, it was that company, and not defendants, that established working hours and location, type of work, and length of relationship. Even the consultants' salaries were passed through to the client companies. While Blagg argues that the mere existence of documents referring to defendants as employers and to the consultants as employees is controlling, she has cited no Tenth Circuit authority to that effect.[3]

In essence, Blagg argues that form (printed employment agreements and payment of wages by a third party payroll company) should control over substance (the client companies' control over employment terms and conditions, including ultimate payment of the amounts due consultants). The law normally disagrees with that proposition, and *Atchley v. Nordam Group, Inc.,* 180 F.3d 1143 (10th Cir.1999), demonstrates that this employment context provides no exception.

In *Atchley,* the plaintiff sued Nordam Group as her employer, but Nordam filed a third-party complaint against Design Support Services (DSS), claiming DSS was plaintiff's true employer. After undertaking a large project, Nordam entered into a written contract with DSS under which DSS provided a significant number of its employees for Nordam's project in exchange for Nordam paying DSS's costs plus a mark-up. Specifically, the contract stated that "personnel furnished [by DSS] will at all times be considered [DSS] employees" and that DSS had the responsibility for "payment of wages, compensation, hiring, and firing" of those employees. *Id.* at 1146. The plaintiff was then hired by Nordam through DSS and received her paychecks from DSS. Thus, the form of the relationship indicated that DSS was plaintiff's employer, although Nordam controlled every aspect of plaintiff's actual work, including her work schedule, leave, and ultimate discharge.

At the close of plaintiff's evidence at trial, the district court found that Nordam was plaintiff's statutory employer and granted DSS's motion for a directed verdict. The trial proceeded against Nordam, resulting in a jury verdict for plaintiff. The district court denied Nordam's motion for judgment as a matter of law or for new trial. The Tenth Circuit affirmed, rejecting Nordam's argument that DSS should not have been dismissed. Under the totality of the circumstances, the court concluded that the party who controlled the employee relationship was the true employer even though another party was identified as the employer in written documents.

---

**3.** In addition, Blagg has not supported her factual statements as required by Rule 56(e) and my pretrial procedures. In accordance with the well-established law in this Circuit, I will not go beyond the properly referenced portions of these materials or comb the record for evidence to support either party's arguments.

    If the rule were otherwise, the workload of the district courts would be insurmountable

and summary judgment would rarely be granted.... [The district courts have] a limited and neutral role in the adversarial process [and must be] wary of becoming advocates who comb the record of previously available evidence and make a party's case for it.

*Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 672 (10th Cir.1998).

The right to control the plaintiff's work demonstrated that Nordam, not DSS, was her employer. *Id.* at 1153.

This case presents the same issue, and the same result must obtain here. The facts before me, which are not subject to genuine dispute, show that defendants' clients, not defendants, had the right to control all key aspects of the consultant's work, including hiring, work assignments, work hours, work environment, and termination.

Given that finding, I must conclude that I lack subject matter jurisdiction over Blagg's Title VII claim in her first claim for relief because defendants did not employ fifteen employees and thus are not subject to Title VII liability.

2. *Lack of Supplemental Jurisdiction Over State Law Claims*

■ With dismissal of the federal question claim, the issue becomes whether I have jurisdiction over the remaining state law claims. There is no claim in this case that I have diversity jurisdiction. Accordingly, the only basis for hearing those claims would be supplemental jurisdiction, as provided in 28 U.S.C. § 1367.

If a case presents a claim within this Court's original jurisdiction, section 1367(a) confers supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." In such circumstances, I would then have the discretion to exercise jurisdiction to hear Blagg's state law claims. *Gullickson v. Southwest Airlines Pilots' Ass'n*, 87 F.3d 1176, 1187 (10th Cir.1996) (supplemental

jurisdiction is doctrine of discretion, not of right). Section 1367(c) provides guideposts for declining to exercise that jurisdiction.[4]

I interpret the statute, however, to preclude such discretionary exercise of jurisdiction when I conclude I do not have original jurisdiction. By its terms, section 1367(a) grants supplemental jurisdiction only in cases where I have original jurisdiction.[5]

■ Existing authority confirms this interpretation of section 1367. The first requirement that must be met before a federal court has power to hear a state law claim, in the absence of diversity jurisdiction, is a federal claim with "substance sufficient to confer subject matter jurisdiction on the court." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Sullivan v. Scoular Grain Co.*, 930 F.2d 798, 803 (10th Cir. 1991). See section 1367(a) (establishing supplemental jurisdiction "in any civil action of which the district courts have original jurisdiction"). Because a court must have original jurisdiction to exercise supplemental jurisdiction, dismissal for lack of jurisdiction "precludes a district court from exercising supplemental jurisdiction over related state claims." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir.1996). *See also Ferguson v. Oklahoma Sec'y of State*, 6 Fed. Appx. 797 (10th Cir. April 3, 2001) ("Supplemental jurisdiction, however, can no longer be sustained because of the lack of original federal jurisdiction over the ADA claim"); *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1255 (6th Cir.1996) ("If the court dismisses plaintiff's

---

4. The decision to exercise supplemental jurisdiction raises questions of convenience, economy, and comity. *Gullickson*, 87 F.3d at 1187 (quotations omitted).

5. The section 1367(c) factors governing the exercise of discretion in declining supplemental jurisdiction apply only where supplemental jurisdiction (and, therefore, original jurisdiction) is proper under subsection 1367(a).

federal claims [for lack of subject matter jurisdiction], then supplemental jurisdiction can *never* exist") (emphasis in original).

Based upon my conclusion that defendants TTG and MiT were not employers as defined by Title VII, I lack original subject matter jurisdiction over any claim presented and therefore also lack supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

Accordingly, it is ordered:

1. Defendants' motion for summary judgment, filed March 7, 2003, is granted.

2. Plaintiff's first claim for relief is dismissed with prejudice for lack of subject matter jurisdiction.

3. Plaintiff's remaining claims are dismissed without prejudice for lack of jurisdiction.

4. Defendants may have their costs related to the Title VII claim.